Public Utilities Commission
No. 80-502

APPEAL OF CONCORD NATURAL GAS CORPORATION *& a.*
(New Hampshire Public Utilities Commission)

August 5, 1981

*Orr & Reno P.A.*, of Concord (*Howard M. Moffett* on the brief and orally), for Concord Natural Gas Corporation, Gas Service, Inc., and Northern Utilities, Inc.

*Gregory H. Smith,* attorney general (*David W. Jordan,* assistant attorney general, on the brief and orally), for the State.

DOUGLAS, J. The plaintiff gas utility companies challenge the New Hampshire Public Utilities Commission's (PUC) promulgation of rules precluding electric and gas utilities from including the cost of certain political, promotional, and institutional advertising and activities in operating expenses. We uphold the rules.

In June 1978, as part of an effort to formulate a national energy policy, Congress enacted the Public Utility Regulatory Policies Act of 1978, PUB. L. NO. 95–617, 92 STAT. 3117 (1978) (hereinafter "PURPA"). Title I of the act established retail regulatory policies for electric utilities; Title III established such policies for natural gas utilities. The stated purposes of both titles were to encourage energy conservation, to encourage utilities to use peak efficiency of facilities and resources, and to provide equitable utility rates to consumers. PURPA §§ 101; 301. To effect those ends, PURPA established standards for advertising by electric and gas utilities. PURPA §§ 113(b)(5); 303(b)(2). The act further required State regulatory agencies to conduct hearings on those standards within two years of PURPA's enactment. PURPA §§ 113(a); 303(a). On the basis of those hearings, State regulatory agencies were to adopt those standards "to the extent . . . [that each agency]'determines that such adoption is appropriate to carry out the purposes of this title, is otherwise appropriate, and is consistent with otherwise applicable State law. . . ." PURPA §§ 113(a)(1); 303(a)(2).

On March 27, 1979, New Hampshire's PUC acknowledged the requirements of PURPA and ordered regulated gas and electric utilities to submit testimony and evidence to the commission to enable it to determine whether to adopt PURPA's advertising standards. On August 15, 1980, the PUC issued proposed rules pertaining to the promotional, political, and institutional advertising and activities of gas and electric utilities. On that same date, the PUC provided public notice of the proposed rules, establishing September 19, 1980, as the closing date for written comments and October 8, 1980, as the public hearing date. The plaintiff gas companies submitted written comments to the PUC and participated in the public hearing.

On October 17, 1980, the PUC adopted the rules at issue in this case, entitled "Rules relative to utility advertising for gas and electric utilities," to be effective November 20, 1980. In accordance with RSA 541-A:4 (Supp. 1979), the PUC filed copies of the rules with the director of legislative services. On November 17, 1980, the plaintiffs filed with the PUC a motion for rehearing, which the

commission denied on December 24, 1980. Pursuant to RSA 541:6, they appeal from the PUC's order adopting the rules relating to advertising by utilities and from the PUC's denial of their motion for rehearing.

The first issue we must address is whether the PUC had the authority to adopt the rules in question. Because the PUC's rules apply to *all* gas utilities and to certain types of activities including advertising, the companies argue that, in adopting the rules, the PUC exceeded the mandate of PURPA, which applies only to gas companies with more than ten billion cubic feet of sales in any calendar year since 1975, PURPA § 301(b), and which applies only to advertising. PURPA § 303(b)(2). The State argues that the PUC adopted the rules pursuant to authority granted under New Hampshire law, which is separate and distinct from the commands of PURPA, and that the agency therefore was not limited to the PURPA requirements. We agree with the State.

■ ■ An administrative agency must act within its delegated powers. *Kimball v. N.H. Bd. of Accountancy*, 118 N.H. 567, 568, 391 A.2d 888, 889 (1978). When the legislature so authorizes, an agency may properly promulgate rules. *Reno v. Hopkinton*, 115 N.H. 706, 707, 349 A.2d 585, 586 (1975). The companies argue that the PUC had no authority to establish rules. In particular, they argue that the ratemaking authority conferred upon the PUC by RSA ch. 378 ("Rates and Charges") does not give the PUC rule-making power. We need not address that argument, however, because the PUC adopted its utility advertising rules under authority of RSA 374:2 and :3 to amend the uniform system of accounts for gas and electric utilities. Accordingly, our inquiry must be whether the PUC had authority to promulgate rules under RSA 374:2 or :3.

■ ■ RSA 374:3 expressly granted to the PUC incidental authority "to carry into effect the provisions" of RSA ch. 374. In RSA 374:8, the legislature empowered the PUC to *"establish a system of accounts and records to be used* by public utilities for their business within this state . . . ." (Emphasis added.) An order prescribing a uniform system of accounts falls within the statutory definition of a "rule," which is a "regulation, standard or other statement of general applicability adopted by an agency. . . ." RSA 541-A:1 (Supp. 1979). Consequently, rulemaking authority may be implied from the express grant of authority in RSA 374:3 necessary to prescribe a uniform system of accounts. *See* 1 AM. JUR. 2d *Administrative Law* § 97 (1962). We therefore conclude

that the PUC had authority to promulgate the rule in question under RSA 374:3 and :8.

■ We also conclude that the advertising rules are within the scope of the statutory authority of RSA 374:3 and :8. Although the rules prohibiting utilities from charging the costs of certain advertising and activities to operating expenses may indirectly affect rates, they are not directly related to utility rate structures and therefore cannot be considered ratemaking. *See* H.R. CONF. REP. No. 95-1750, 95th Cong., 2d Sess. 75, *reprinted in* [1978] U.S. CODE CONG. & AD. NEWS 7797, 7809.

■ ■ Because the rules were adopted under State law, the PUC was not required to adhere strictly to PURPA's requirements. In fact, PURPA itself does not mandate such conformity. The legislative history of PURPA explains that State agencies were given broad discretion to adopt the advertising standards, and were free to reject the standards entirely as long as the purposes of the act were carried out. H.R. CONF. REP. No. 95-1750, 95th Cong., 2d Sess. 75, *reprinted in* [1978] U.S. CODE CONG. & AD. NEWS at 7809. Although the companies argue that the imposition of PURPA's standards on small gas companies will frustrate the goals of the act to foster energy conservation and equitable rates to consumers, the PUC found the opposite to be true. That finding is supported by the record. Advertising increases gas consumption and a witness for Manchester Gas Co. testified that, because of the way gas is stored and marketed, the cost of gas increases as more gas is sold. Thus, the PUC rules are consistent with PURPA's requirements because with less advertising more gas will be conserved and with lower consumption of gas the cost to consumers will apparently be lower.

■ ■ We next consider the companies' procedural arguments. First, they argue that the PUC's failure to act upon their motion for rehearing within the ten-day period prescribed by RSA 541:5 was prejudicial and an abuse of discretion. The State admits that the PUC did not act upon the motion within ten days but asserts that the provisions of that statute are directory not mandatory. We reject the State's argument. RSA 541:5 provides:

> "Upon the filing of such motion for rehearing, the commission *shall* within ten days either grant or deny the same, or suspend the order or decision complained of pending further consideration, and any order of suspension may be upon such terms and conditions as the commission may prescribe."

(Emphasis added.) Absent an indication of legislative intent to the contrary, the word "shall" acts as a command. *Town of Nottingham v. Harvey,* 120 N.H. 889, 895–96, 424 A.2d 1125, 1129 (1980); *Silva v. Botsch,* 120 N.H. 600, 601, 420 A.2d 301, 302 (1980). *Cf. State v. Mullen,* 119 N.H. 703, 406 A.2d 698 (1979). The State has raised no argument other than administrative convenience in favor of the construction of "shall" as directory. Accordingly, we conclude that the PUC was in error in delaying action on the motion for rehearing for almost two months.

 We will not set aside an agency's decision for a procedural irregularity, however, unless the complaining party shows material prejudice. *Patenaude v. Town of Meredith,* 118 N.H. 616, 621, 392 A.2d 582, 586 (1978). The only harm asserted is infringement of a vague "due process right to a thirty day appeal period under RSA 541:6." RSA 541:6 does not grant an absolute right to appeal within thirty days of a PUC decision, but rather allows an applicant to appeal within thirty days of the PUC's action on a motion for rehearing. In this case, the companies perfected their appeal within that time period, and they allege no prejudice from the PUC's delay in acting on the motion. Although we conclude that the companies were not prejudiced by the PUC's delay in responding to a motion for rehearing, the agency should conform its procedures to the statutory commands, and we require the PUC to do so in the future.

 We also dismiss the companies' request to put teeth into RSA 541:5 by ruling that the PUC's failure to act upon a motion for rehearing within the ten-day limit will be deemed either a grant or denial of the motion. In other contexts, the legislature has seen fit to incorporate similar enforcement provisions into a statute. *See* RSA 36:23 (Supp. 1979) (planning board procedure on plats). When the legislature has failed to include such provisions in a statute, we presume that it did not intend the law to have that effect and we will not judicially engraft those terms. *Barry v. Town of Amherst,* 121 N.H. 335, 339, 430 A.2d 132, 135 (1981).

 The next procedural argument is that the rules are unenforceable because the PUC never issued a final order as required by RSA 363:17-b (Supp. 1979). RSA 363:17-b (Supp. 1979) provides:

"The commission shall issue a final order on all matters presented to it. Final orders of the commission shall include, but not be limited to:

I. The identity of all parties;

II. The positions of each party on each issue;

III. A decision on each issue including the reasoning behind the decision; and

IV. The concurrence or dissent of each commissioner participating in the decision."

The State correctly points out that the statute does not require a paper with the incantation "final order" printed on it, but merely requires a document that meets the requirements of RSA 363:17-b I–IV (Supp. 1979). The PUC's report dated October 27, 1980, is a final order within the meaning of the statute. The seventeen-page report clearly sets out all the comments at the public hearing, discusses the rules' procedural history, summarizes the various commenters' positions, includes staff comments, agency findings and conclusions, and the decision to adopt the rules as set out in the report. It is signed by three commissioners. All in all, the report leaves no doubt of the agency's final action on the advertising rules.

No other procedural irregularities have been alleged. We therefore conclude that the rules were validly adopted in accordance with the requirements of RSA ch. 541-A. *Cf. Appeal of John Denman*, 120 N.H. 568, 573, 419 A.2d 1084, 1088 (1980).

 We next consider the substantive challenges to the PUC's rules. The gas companies appealed the PUC's decision pursuant to RSA ch. 541. RSA 541:13 establishes the standard for judicial review of rulemaking and adjudicatory proceedings of commissions and agencies. *Melton v. Personnel Comm'n*, 119 N.H. 272, 276, 401 A.2d 1060, 1063 (1979). RSA 541:13 provides in part:

"The burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful . . . and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."

This court will overturn an agency's decision if it is clearly unreasonable or unlawful. *Appeal of John Denman, supra* at 572, 419 A.2d at 1087. But this court is not free to substitute its judgment on the wisdom of the rules for that of the commission. *LUCC v. Public Serv. Co. of N.H.*, 119 N.H. 332, 340, 402 A.2d 626, 631

(1979); *see* Wright, *The Courts and the Rulemaking Process: The Limits of Judicial Review*, 59 CORNELL L. REV. 375, 390–91 (1974) (hereinafter "Wright"); 2 F. COOPER, STATE ADMINISTRATIVE LAW 787 (1965). We, therefore, must reject the companies' arguments that the public interest would be better served by different rules and that there is no reason for the regulation because the utility companies have not abused the existing accounting system.

■ The companies also argue that the PUC failed to consider evidence that gas utilities should not have been included within the rules. Our review may inquire whether the agency's decision was fairly based on a consideration of all relevant factors. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971); Wright at 391. In support of their contention, the companies cite testimony of a PUC staff member who admitted that she did not have the gas companies in mind at the time she drafted the proposed rules. There is, however, no evidence that the PUC did not consider all of the companies' comments submitted after announcement of the proposed rules and before promulgation of the final rules. In fact, the evidence is to the contrary. All of the gas companies' comments were summarized in the PUC's final report. Moreover, the final rules were substantially different from the proposed rules, demonstrating that the PUC had considered the suggestions of various commenters and incorporated those they found valid. The fact that the PUC did not adopt the companies' exact suggestions does not suggest that it did not consider them. The record indicates that the PUC has considered all the evidence before it.

■ Finally, we consider the companies' argument that the advertising rules violate their first amendment rights. The short answer to that argument is that the rules do not prohibit utility advertising but merely determine who will *pay* for it. *Cf.* H.R. CONF. REP. No. 95-1750, 95th Cong., 2d Sess. 77, *reprinted in* [1978] U.S. CODE CONG. & AD. NEWS 7811. They therefore do not conflict with recent Supreme Court decisions holding that *bans* on certain types of utility advertising violate the first and fourteenth amendments. *Central Hudson Gas v. Public Service Comm'n*, 447 U.S. 557 (1980); *Consolidated Edison v. Public Serv. Comm'n*, 447 U.S. 530 (1980); *cf.* 45 FED. REG. 76370, 76370 (November 18, 1980).

Having reviewed the record, we conclude that the PUC's utility advertising rules were validly promulgated within the authority of RSA 374:3 and :8, according to the procedures mandated by RSA

ch. 541-A, and that the PUC's action was not unlawful or unreasonable.

*Affirmed.*

BATCHELDER, J., did not sit; the others concurred.