Water Resources Board
No. 81-162
No. 81-163

APPEAL OF JEFFREY LATHROP *& a.*

APPEAL OF THE APPALACHIAN MOUNTAIN CLUB
(New Hampshire Water Resources Board)

March 22, 1982

*Peter S. Wright*, of Manchester, and *Bruce W. Felmly*, of Manchester (*Mr. Wright* and *Mr. Felmly* on the brief, and *Mr. Wright* orally), for Lathrop & a.

*Barto and Gfroerer*, of Concord (*John W. Barto* on the brief and orally), for the Appalachian Mountain Club.

*Gregory H. Smith*, attorney general (*Edward L. Cross, Jr.*, assistant attorney general, on the brief and orally), for the New Hampshire Water Resources Board.

*Gallagher, Callahan & Gartrell*, of Concord (*Steven J. McAuliffe* on the brief and orally), for Androscoggin Electric Corporation.

*Thomas B. Arnold*, of Boston, Massachusetts, by brief and orally, for the New England Rivers Center, as amicus curiae.

BATCHELDER, J.   This is an appeal from order 69:01-H of the New Hampshire Water Resources Board (WRB), dated March 26, 1981, granting the petition of the Androscoggin Electric Corporation to develop a hydro-electric facility on the Androsoggin River in the Town of Dummer. The WRB, on March 5, 1980, had recommended to the Governor and Council that a lease or transfer of interests in land be conveyed from the State to the Androscoggin Electric Corporation as part of the overall hydro-electric project. The area involved in this agency appeal consists of an old dam in a state of disrepair plus about twenty-five acres of land and is generally known as the Pontook Dam site.

On June 8, 1967, Public Service Company of New Hampshire conveyed by deed to the State of New Hampshire the subject premises together with approximately 1,500 acres of land along the

Androscoggin River. The dedication included a restriction that the land be used for recreational purposes. In 1976, the Governor and Council assigned jurisdiction over the area to the WRB. Jurisdiction over the "lands" in the Pontook site was later transferred to the New Hampshire Department of Resources and Economic Development (DRED) on April 28, 1977.

The Androscoggin Electric Corporation began petitioning on July 28, 1978, to acquire the property needed to construct a hydroelectric generating plant. Because a transfer of State-owned land was involved, the Governor and Council referred the petition to WRB and DRED for recommendations on November 22, 1978. The WRB endorsed the project on February 1, 1979, but, shortly thereafter, DRED indicated that it believed that the development was not in the public interest and that it might violate the terms of the dedication.

Finally, on March 5, 1980, the WRB passed two resolutions stating:

> "In order that all authority for supervision over this site be again situated in one department *and so it can move forward,* I, Salvatore P. Grasso, Director, move that the authority over the lands formerly assigned by Governor and Council to DRED be reassigned and returned to the authority of the New Hampshire Water Resources Board *for implementation of this project as set forth in the modified petition before us.*
>
> . . .
>
> [I]t was unanimously voted to authorize the Chairman to *recommend to Governor and Council, that they negotiate a lease, or necessary rights to the dam, water rights, and land* held by the State of New Hampshire at the Pontook Reservoir, subject to Mr. Robert Shaw receiving the appropriate permits from the National Energy Regulatory Commission to *construct a hydroelectric facility at this site.*"

(Emphasis added.) This resolution was appended to a memorandum sent to the Governor and Council, dated March 18, 1980, again urging approval of the project. The project was shortly thereafter assigned exclusively to the WRB by the Governor and Council. Although the rebuilding of the dam and the transfer of interests in the State lands are parts of a total project, the order under appeal deals only with the dam.

In November 1980, the Androscoggin Electric Corporation peti-

tioned the WRB for permission to rebuild the dam. The WRB held a public hearing on January 21, 1981, to determine the public use and benefit of the dam reconstruction, as required by RSA 482:16 and :19 to :22. On March 26, 1981, the WRB issued an order approving the application, subject to certain conditions. Intervenors Lathrop & a. and the Appalachian Mountain Club appealed. The appellants argue that they were denied due process. We agree.

■■ That a governmental tribunal must utilize fair procedures is elemental. *See* U.S. CONST. amends. V and XIV; N.H. CONST. pt. 1, art. 35; *In re Murchison*, 349 U.S. 133, 136 (1955). It is well established that due process guarantees also apply to administrative agencies. *See, e.g., Withrow v. Larkin*, 421 U.S. 35, 46 (1975); *Gibson v. Berryman*, 411 U.S. 564, 579 (1973); *In re Jack O'Lantern, Inc.*, 118 N.H. 445, 449, 387 A.2d 1166, 1168 (1978); *N.H. Milk Dealers' Ass'n v. Milk Control Board*, 107 N.H. 335, 337–38, 222 A.2d 194, 197–98 (1966). For this reason many federal and State agencies utilize administrative law judges. *See generally* 1 F. COOPER, STATE ADMINISTRATIVE LAW 331–34 (1965); K. DAVIS, ADMINISTRATIVE LAW TEXT § 10.06, at 223–24 (1972). Although there is a presumption of regularity and impartiality attending the actions of an administrative agency, *see, e.g., Hortonville Dist. v. Hortonville Ed. Assn.*, 426 U.S. 482, 497 (1976), it is a rebuttable one. *See, e.g., Cedar Rapids Steel Transp. v. Iowa State Com. Com'n*, 160 N.W.2d 825, 836 (Iowa 1968), *cert. denied*, 394 U.S. 918 (1969).

■ The appellants argue that the WRB action should be nullified because it showed "a predetermined purpose to reach a determined end." *See Continental Box Co. v. NLRB*, 113 F.2d 93, 96 (5th Cir. 1940). This court has previously stated that:

> "It is a well-established legal principle that a distinction must be made between a preconceived point of view about certain principles of law or a predisposed view about the public or economic policies which should be controlling and a prejudgment concerning issues of fact in a particular case. . . . There is no doubt that the latter would constitute a ground for disqualification."

*N.H. Milk Dealers' Ass'n v. Milk Control Board*, 107 N.H. at 339, 222 A.2d at 198 (citation omitted). *See also Cinderella Career and Finishing Schools, Inc. v. FTC*, 425 F.2d 583, 589–91 (D.C. Cir. 1970). *Cf. Hortonville Dist. v. Hortonville Ed. Assn.*, 426 U.S. at 493. ("Nor is a decision-maker disqualified simply because he has

taken a position, even in public, on a *policy issue* related to the dispute . . . .) (Emphasis added.)

■ The entire series of events contained in the record leads us to conclude that the appellants have made a sufficiently strong showing that the WRB had determined the outcome prior to the hearing and decision. The WRB has, at the least, given the appearance that it had gone far beyond asserting a policy favoring hydro-generation. The WRB has evinced a predetermination that this particular project was in the public interest. Especially troubling is the March 5, 1980, vote of the WRB to seek to divest DRED of its jurisdiction over the project and assume sole responsibility so that it would be completed.

Since the appellants have been denied basic due process rights, we vacate the order and remand the petition to the WRB for reconsideration of the public use and benefit of the project. The WRB can consider the evidence already in the record but must hold another hearing to gather such other relevant evidence as may be introduced. On rehearing, the board is free to reaffirm, amend or reverse its original order.

■ This remand is made not to punish the WRB but to insure that the due process rights of the interested parties are scrupulously protected. The WRB is the only State body empowered to hear this case, *see* RSA 482:19 to :22, and thus the "rule of necessity" applies. *See Grinnell v. State*, 121 N.H. 823, 826, 435 A.2d 523, 525 (1981); *see also United States v. Will*, 449 U.S. 200, 213–16 (1980). Whether a remand under circumstances such as these is one of "utility or futility" is a matter touched upon by Professor Jaffe in his treatise.

> "In a number of famous cases the remand has achieved no more than new rationalization for the same result. Is a remand thus futile because the agency will adhere stubbornly to that which it has once willed? There is no doubt that to some extent such an attitude is at work. I would suggest by way of mitigation the hypothesis that when another case comes before it, the agency will be more disposed to follow the judicial admonition. In other words, the effectiveness of judicial supervision should be judged not only in terms of the case in which the correction was administered, but in its effect on doctrine in the long run."

L. JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 589 (1965) (citation omitted).

Having remanded the petition to the Water Resources Board for further action, we do not rule upon the other issues raised by the appellants: whether the contemplated activity is in violation of the terms of the Public Service Company's deed, and whether there was sufficient evidence to support the decision.

*Reversed and remanded.*

KING, C.J., did not sit; BROCK, J., dissented; the others concurred.

BROCK, J. dissenting: I respectfully dissent. While I share my brothers' distaste for the ramifications of the Water Resources Board's March 1980 resolutions as they bear on the appearance of justice, the resolutions themselves and my review of the transcript of proceedings conducted before the Board in January 1981 convince me that notwithstanding the resolutions, "[t]he totality of the picture presented . . . does not display a predisposition immune to contrary evidence or persuasion." *Belsinger v. District of Columbia,* 295 F. Supp. 159, 162–63 (D.D.C. 1969), *rev'd on other grounds,* 436 F.2d 214 (D.C. Cir. 1970). Surely it cannot reasonably be argued that the Governor and Executive Council, in furtherance of a well-established executive branch policy of encouraging the development of hydro-electric power in the State, were compelled to refer this matter to the Department of Resources and Economic Development, which itself was openly predisposed to find that the project was not in the public interest, for a public hearing.

Given the fact that the record of proceedings conducted before the Board reveals not a scintella of taint or bias, I believe that the sanction of remand for additional hearing employed by the majority is extreme and, under the circumstances, is unnecessarily wasteful of the parties', and the executive and judicial branches', resources. In my judgment, a terse admonition to administrative agencies would suffice and, accordingly, I would reach the other issues now properly before the court.