Public Utilities Commission
No. 82-050
No. 82-106

APPEAL OF MOUNTAIN SPRINGS WATER COMPANY, INC.

APPEAL OF MOUNTAIN LAKES VILLAGE DISTRICT *& a.*
(New Hampshire Public Utilities Commission)

August 31, 1983

*Myers & Laufer*, of Concord (*Daniel A. Laufer* on the brief and orally), for Mountain Springs Water Company.

*Laurence F. Gardner*, of Hanover, by brief and orally, for Mountain Lakes Village District and Mountain Lakes Community Association.

BROCK, J.   These are cross-appeals, pursuant to RSA chapter 541, from a decision of the Public Utilities Commission (commission) in which permanent rates were set and numerous other matters were determined with respect to the Mountain Springs Water Company and its customers, represented by the Mountain Lakes Village District and the Mountain Lakes Community Association.

The water company and its customers have been engaged in seemingly endless legal combat before the commission and the courts for many years. *See, e.g., Richter v. Mountain Springs Water Co., Inc.*, 122 N.H. 850, 451 A.2d 386 (1982); *Mountain Springs Water Co., Inc. v. Godston*, 121 N.H. 408, 430 A.2d 180 (1981); *Mountain Springs Water Co. v. Huber*, 119 N.H. 676, 406 A.2d 709 (1979).

In the present appeals, one party or the other questions virtually every aspect of the commission's lengthy report and order dated November 9, 1981, and supplemental reports and orders dated December 31, 1981, and February 1, 1982, issued in response to the parties' motions for rehearing. The appeals before us present us with an appropriate occasion to emphasize that "this court does not sit as a trier of fact in appeals from the commission," *LUCC v. Public Serv. Co. of N.H.*, 119 N.H. 332, 340, 402 A.2d 626, 631 (1979). The parties are not entitled to a *de novo* determination of all the issues which were before the commission, merely because they have chosen to appeal every issue decided. It is well settled that "[t]he ultimate issue before this court on appeal is whether the party seek-

ing to set aside the decision of the commission has demonstrated by a clear preponderance of the evidence that such order is contrary to law, unjust, or unreasonable." *Id.*, 402 A.2d at 632; *see* RSA 541:13.

In the underlying rate case, the water company requested $61,200 in yearly operating expenses and approval of a rate base of $403,161. The company proposed a $65 standby fee and a $635 annual fee for general service, the latter figure representing a 325% increase and an amount two to six times that of any other water utility in the State for the same service. The commission conducted a lengthy hearing at which testimony and documentary evidence were submitted by the water company, the customers, and the commission staff. After calculating what it considered to be the company's legitimate operating expenses and rate base, the commission approved a $10 standby fee and an annual fee of $266.

The water company challenges every aspect of the commission's determination of its expenses and its rate base, insofar as the commission disallowed or reduced the amounts requested by the company. The customers, through the village district and the association, argue that the commission's calculation of the company's expenses should be upheld, but that its calculation of the rate base should be set aside. Both parties appeal the commission's establishment of what it termed a "unique policy" to deal with customer payments.

■ We have carefully reviewed the commission's three orders and its discussion and calculation of the company's requested general inflation factor of 15%, and its expense figures for operations and maintenance, professional fees, office salaries, office expenses and rent, and "miscellaneous." We conclude, with respect to these matters, that the commission has "set forth its methodology and findings fully and accurately," *see LUCC v. Public Serv. Co. of N.H.*, 119 N.H. at 341, 402 A.2d at 632, and we find that its allowances and disallowances of the company's requested expenses have a basis in the record and are not unreasonable, unjust, or unlawful. The company having failed to meet its burden on appeal of proving the contrary, we affirm the commission's findings and rulings as to these matters. *Id.* at 340, 402 A.2d at 632.

The water company requested that it be allowed $9,909 for customer billing costs, $6,000 of which reflected legal expenses the company asserted were necessary because of customer refusals to pay bills. The commission, however, disallowed *any* legal fees as

part of customer billing costs, because it determined that a so-called "unique policy" would eliminate the need for such fees.

The commission announced that it was establishing the "unique policy" of automatic, permanent disconnection of any customer who refused, in the future, to pay the rates and fees authorized by the commission. The commission stated that it was promulgating the "policy" in order to protect those water company customers who have paid their bills and have not contributed to the enormous amount of litigation and expense which has characterized the interactions between the company and certain of its customers in the past. The commission stated that:

> "This process, which has in the past resulted in thousands of dollars in attorney fees, places an undue burden on the solid paying customer. Under the previous operation of the system, the Company would pursue these claims into the courts, incur thousands of dollars in legal fees and then seek to pass on these collection costs to their good paying customers."

■ Notwithstanding the fact that the commission's concerns are clearly reasonable, and its frustration justified, it remains that the "policy" providing that the automatic penalty for non-payment of bills be permanent disconnection from the water system, extending even to future owners or lessors of the property, was not adopted in accordance with proper rule-making procedures, *see* RSA 541-A:1, IV (Supp. 1981); RSA 541-A:3, III, nor was sufficient consideration given to certain due process concerns. *See* N.H. CONST. pt. I, arts. 2, 12; *see generally Appeal of Concord Natural Gas Corp.*, 121 N.H. 685, 689–93, 433 A.2d 1291, 1295–96 (1981).

The commission itself tacitly recognized that there might be problems with this "policy," as it petitioned this court to remand these appeals for reconsideration of the issue. If the commission is of the opinion that the well-being of the water company and its customers requires extraordinary enforcement measures, it must develop them in accordance with appropriate rule-making procedures. *See* RSA 541-A:3, I (Supp. 1981). Accordingly, this issue is remanded for further consideration.

■ As an additional matter, because we have held that the "unique policy" is without legal effect, the commission's reliance on the policy to effectively eliminate any legal expenses associated with customer billing was misplaced. On remand, the commission should

consider whether its otherwise reasonable approval of $7,000 for rate case legal expenses, amortized over two years, should be increased to include any portion of the $6,000 requested specifically for legal expenses associated with customer billing.

Both the water company and its customers have appealed the commission's determination of the company's rate base. The customers argue that the rate base should be zero. The company maintains that it borrowed $403,061 to acquire its assets, and that the commission should have found a rate base equalling this amount, as well as allowing it rates sufficient to pay interest due on this debt.

■ The company was granted a rate base of $109,814. In arriving at this figure, the commission relied upon a detailed and complicated analysis by its staff of the documents submitted by the water company, and found that $509,814 was the amount which could be directly attributed to the cost of the water system. The commission's findings as to this amount are expressly upheld as they have not been shown to be unreasonable, and the commission satisfied its obligation to articulate its reasons and methodology. *LUCC v. Public Serv. Co. of N.H.*, 119 N.H. at 340–41, 402 A.2d at 632. Troublesome, however, is the commission's calculation of customer contributions to the costs of building the water system.

It is clear that the commission staff, in preparing its report, was cognizant of the fact that "funds contributed in aid of construction . . . supplied by customers, must be deducted from the rate base as these are funds upon which investors are not entitled to any return." *Windham Estates Ass'n v. State*, 117 N.H. 419, 422, 374 A.2d 645, 647 (1977). The staff report concluded, in fact, that it was possible the rate base should be zero, because customer contributions might have provided the entire costs of construction. However, the report also indicated that the amounts contributed by customers toward construction were not precisely established.

In its final reports, the commission referred to two different audits containing disparate calculations of customer contributions in the amount of $593,517 and $400,000, respectively. The commission stated that, based on these figures, the "actual cost to the water company for rate base could be a zero cost using the staff document cost as the construction cost."

■ The commission decided, however, to adopt the $400,000 figure as representing customer contributions, but gave no reasons for this decision. While the commission may have had good reasons for adopting the lesser figure, a fact which resulted in a rate base of

$109,814 and a yearly recoverable rate of return of $12,629, we cannot, on the record before us, ascertain them. *See Appeal of Granite State Elec. Co.,* 121 N.H. 787, 792, 435 A.2d 119, 121–22 (1981). We therefore remand this issue so that the commission can articulate its position and reasoning.

The commission's lack of clarity and specificity on this issue extends also to its disposition of the company's argument that interest on the claimed loans should have been allowed for in its rates. The commission disallowed this interest expense. It stated that the company had failed to prove that the underlying debts were related to utility investment or utility operations. The commission stated further that the company had failed to maintain records sufficient for the commission to evaluate the validity and appropriateness of the debt. It noted, also, that the company had never sought formal approval of the debt, and that such approval was still an outstanding question. Finally, the commission stated that because the company did not seek and gain commission approval in accordance with RSA chapter 369, which requires public utilities to seek the commission's approval prior to issuing notes, bonds, stock, or other evidence of indebtedness, the claimed debt was not legal and need not be recognized by the commission.

■ The commission's stated reasons for denying the recovery of any interest expenses are inconsistent. In addition, since the commission found a rate base of $109,814, it appears that it did recognize *some* investment on the part of the water company. The commission should therefore have specifically examined whether this investment was financed by the loans in question. Should the commission, on remand, determine that the customers did not contribute the entire cost of the water system and affirm its prior rate base allowance of $109,814, it must clearly explain its "methods, findings, and order" with respect to this issue. *LUCC v. Public Serv. Co. of N.H.,* 119 N.H. at 341, 402 A.2d at 632.

In addition to their claim that the commission's calculation of the company's rate base was factually inaccurate and insufficiently explained, the customers have argued that the company's rate base should be zero as a matter of law. They ask this court to declare that where a water company and a builder-developer have a common ownership, and where, in addition, the developer has agreed to provide a water system as part of its construction obligations vis-à-vis the buyers, the utility which ultimately operates the water plant should not, as a matter of law, be entitled to any rate of return

because its capital investment is zero. We are not persuaded by this argument in the context of the facts of the present case.

■ Involved in this case are some 1,100 lots which the developer began conveying in the mid-1960's under various deeds and circumstances. The water system itself, which has been the subject of virtually endless litigation, was also developed in stages and may need to expand in the future if some of the now-empty lots are occupied. Given these facts, it is our opinion that this case does not present a proper vehicle for the extension,. advanced by the customers, of the concept that contributions in aid of construction are not part of the rate base.

■ As a final matter, we note that this court has expressly recognized that the commission authorized the water company to operate as a public utility in 1976, *see Mountain Springs Water Co., Inc. v. Godston*, 121 N.H. at 410, 430 A.2d at 181; *Mountain Springs Water Co. v. Huber*, 119 N.H. at 677–78, 406 A.2d at 710, and the commission itself clearly acknowledges this fact in its report and order. We therefore find the company's arguments that the commission's report and order had the effect of retroactively denying it this status to be entirely lacking in merit.

*Remanded.*

All concurred.