Water Resources Board
No. 82-413
Merrimack
No. 82-561

APPEAL OF COMMITTEE TO SAVE THE UPPER ANDROSCOGGIN *& a.*
(New Hampshire Water Resources Board)

SOCIETY FOR THE PROTECTION OF NEW HAMPSHIRE FORESTS *& a.*

v.

NEW HAMPSHIRE WATER RESOURCES BOARD *& a.*

October 4, 1983

18

*Gregory H. Smith*, attorney general (*Edward L. Cross, Jr.*, assistant attorney general, on the brief and orally), for the New Hampshire Water Resources Board.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester, and *Peter S. Wright, Jr.*, of Henniker (*Bruce W. Felmly* and *Mr. Wright* on the brief, and *Mr. Felmly* orally), for the Committee To Save the Upper Androscoggin and for Jeffrey Lathrop *& a.*, plaintiffs.

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Steven J. McAuliffe* on the brief and orally), for the defendant Androscoggin Electric Corporation.

BROCK, J. In this appeal from an order of the New Hampshire Water Resources Board, and interlocutory transfer from the Superior Court (*Pappagianis*, J.), herein consolidated for decision, we decide issues arising out of a proposal to construct a hydroelectric generating facility (the "Pontook project") on the Androscoggin River in the northern part of this State.

The parties have been before this court previously. In *Appeal of Lathrop*, 122 N.H. 262, 444 A.2d 505 (1982), the court reversed a water resources board order granting the Androscoggin Electric Corporation ("Company") permission to develop the facility on the Androscoggin River. A majority of the court ruled that the board had acted improperly in its consideration of the proposed facility, denying due process to the various appellants. *Id.* at 266, 444 A.2d at 507; *see* N.H. CONST. pt. I, art. 35. The case was remanded to the board for its reconsideration.

After a rehearing, at which all of the parties had an opportunity

to present witnesses and submit documentary evidence, the five-member board, three of whom were newly-appointed, again voted to permit construction of the Pontook project. The board made detailed findings explaining the basis for its decision and issued a comprehensive order on August 4, 1982. After the plaintiffs' request for rehearing and motion to suspend were denied, an appeal was filed in this court.

In early 1982, the plaintiffs in this appeal also filed an action in superior court, in which they sought to bar implementation of a long-term lease, approved by the Governor and Executive Council, of land along the Androscoggin River to the Company for the Pontook project. The land had been deeded to the State by Public Service Company of New Hampshire in 1967. The plaintiffs argued that the proposed use of the property would be in violation of its prior "dedication" as a public recreational area, and that the Governor and Council lacked the authority to abrogate the "dedication" through a lease of the property. Specifically, the plaintiffs alleged that RSA 4:40 bars the transfer or lease by the Governor and Council of any "real estate given or bequeathed to the state under provisions of trust."

After the plaintiffs filed their suit in superior court, the legislature passed chapter 32 of the Laws of 1982, an act "Relative to the Pontook Dam Project" (effective May 22, 1982). This act provided as follows:

> "Be it Enacted by the Senate and House of Representatives in General Court convened:
>
> 32:1 Purpose. The legislature finds that in order to meet the objectives and purposes of chapters 505 and 535 of the laws of 1981 and to provide funding for the state dam maintenance program set forth in chapter 24 of the laws of 1982 it must take specific action in regard to the Pontook project so-called. It further finds that in its enunciation of an appropriate rule of conduct for administrative agencies, the New Hampshire supreme court has in its wisdom ordered another hearing in the permit process dealing with said project, which hearing could itself lead to even more delay because of appeals therefrom. It is the purpose of this act to direct the holding of said rehearing under procedures set forth in this act, to ratify prior hearings, to confirm the power of the governor and council to convey said land free from any dedication inconsistent with the construction and full implementation of the project, and to expedite the completion of the permit process without denial of due process for any person or party.

32:2 Pontook Dam. Notwithstanding any other applicable statutory or regulatory provision, the state of New Hampshire and Androscoggin Electric Corporation, pursuant to the provisions hereof, are hereby authorized to proceed with reconstruction of the Pontook dam, and construction and operation of a hydroelectric generating facility, the so-called Pontook project, at the Pontook dam site in Dummer, New Hampshire. The project shall be constructed, implemented and maintained in accordance with the environmental, recreational and other applicable terms of and restrictions imposed by water resources board order number 69.01-H dated March 26, 1981, and by the wetlands board by order dated April 22, 1980, and by the lease between Androscoggin Electric Corporation and the state which was approved by the governor and council on December 23, 1981, and by any further conditions or restrictions imposed by the water resources board pursuant to an additional hearing procedure ordered hereby in deference to the supreme court decision in the case of *Appeal of Lathrop et al.* dated March 22, 1982, which hearing shall be conducted with procedures consistent with usual board practice with regard to duration and manner of presentation of information and testimony, which procedures shall be administered with due consideration to any due process rights of persons or parties participating. In determining whether further conditions or restrictions shall be imposed, the board shall consider and weigh the standards set forth in RSA 482:21. The lease is hereby ratified and any recreational use restriction applicable to the state land being leased thereunder is hereby abrogated to the extent it may be inconsistent, if at all, with the construction and full implementation of the so-called Pontook project. Future operation and regulation of the hydroelectric generating facility shall be in accordance with applicable statutory and regulatory provisions.

32:3 Effective Date. This act shall take effect upon its passage."

The plaintiffs lobbied against passage of this legislation, and also sought to postpone the rehearing before the board in order to seek an opinion from this court that the pending bill was unconstitutional. They argued before the board that the bill mandated construction of the electric facility, and that the board could not give them a proper hearing as required by this court's decision in *Appeal*

*of Lathrop*. The board, however, on advice of the attorney general's office, advised the plaintiffs at the outset of the hearing that it viewed the legislative action as being compatible with the court-ordered rehearing, and that it considered itself free to affirm, amend, or repeal its previous order.

The following questions of law regarding the constitutionality of chapter 32 of the Laws of 1982 and the status of the alleged dedication were transferred to this court from the superior court under Rule 9:

> "1. Is Laws 1982, Chapter 32, unconstitutional or otherwise invalid. . . .
>
> 2. If Laws 1982, Chapter 32, is a valid statutory enactment, does it operate to release, alter, and eliminate any recreational use restriction applicable to the Pontook site that may be inconsistent with the proposed project?
>
> 3. In the event the Supreme Court remands the case for a trial on the merits, by what legal and factual standard should the Superior Court determine whether or not a recreational use restriction exists with regard to the Pontook Dam and surrounding land, and, if such a restriction does exist, by what legal and factual standard should the Court determine whether the proposed hydroelectric project is consistent or inconsistent with that restriction?
>
> 4. What effect, if any, would a release or consent by Public Service Company to the proposed use have on the nature and scope of such restriction?"

The plaintiffs argue strenuously on appeal that the legislation is unconstitutional and that the board was prevented by it from rendering an impartial decision with respect to the Pontook project. The appeal and interlocutory transfer thus raise issues that may be reduced to the following: (1) whether chapter 32 of the 1982 session laws is constitutional, and the status of the alleged dedication in light of chapter 32 and of the grantor Public Service Company's actions with respect to the Pontook project; and (2) whether the plaintiffs were afforded due process of law in the rehearing before the board, and whether the board's order and findings may be affirmed.

■ We have carefully reviewed the transcript of the Joint House Appropriations Committee and Senate Finance Committee hearing held on May 10, 1982, at which chapter 32 was discussed, as well as the official Senate Finance Committee report issued with respect to the legislation. *See* N.H.S. JOUR. 819–28 (1982). We are of the opin-

ion that this legislative record overwhelmingly supports the contentions of the State and the Company that the legislation was primarily intended to cure any defect which might exist in the lease executed by the Governor and Council, and we view this purpose and the resulting legislation as offending no constitutional limitations on legislative power.

As the plaintiffs argue, RSA 4:40, by its own terms, does not apply to "real estate given or bequeathed to the state under provisions of trust." Were the statutory exclusion relating to lands conveyed under provisions of trust applicable in this case, the Governor and Council might very well have lacked the authority to lease the land in question to the Company.

We note in passing, however, that it is doubtful whether the land conveyed to the State by Public Service Company would, in fact, be considered as falling within this statutory exclusion, particularly considering that the quitclaim deed actually given to the State by Public Service Company varies from the corporate resolution authorizing the conveyance in that the deed states only that:

> "The use of the within described premises is subject to the limitation that if the premises or any part thereof shall be dedicated for use as a public recreational area the premises or such part thereof shall be dedicated in honor or in memory of some prominent person; such person to be selected, and such dedication to be proclaimed, by the Governor of The State of New Hampshire."

In addition, the fact that the grantor, Public Service Company, as discussed below, has indicated that it has no objection to the proposed use of the property, further undermines any claim that the land was conveyed to the State "under provisions of trust."

In view of the legal action filed by the plaintiffs in superior court, however, it is readily understandable that the legislature, which has demonstrated enthusiastic support for the Pontook project, *see* N.H.S. JOUR. 819–25 (1982), would desire to do all within its power to remove any doubts regarding the validity of the lease. As stated by Senator Sanborn:

> "By this time I am sure you are all familiar with the Pontook case. Pontook dam was conveyed to the State by the Public Service Company in 1967. Opponents have raised a question regarding the state's rights to lease it to Mr. Shaw after the lease had already been signed by the Governor and Council. Opponents say that there is some kind of dedication to the public which is inconsistent with

the terms of the lease. Since the state has already leased the land to Mr. Shaw, and since we represent the public, that part of the bill that cancels the dedication is both necessary and appropriate. By validating the lease and by removing any alleged clouds to the title, we are able to confirm that the lease signed by the Governor and Council is reliable."

*Id.* at 819. The plaintiffs assert, however, that the legislature *could not*, as a matter of law, abrogate any dedication which might exist in order to validate the lease of the property in question. We view this argument to be lacking in merit.

RSA 4:39 states that "[a]ll real estate acquired under the provisions of this chapter shall be held by the state for the purposes for which it was acquired, *until otherwise ordered by the legislature.*" (Emphasis added.) In our view, this is precisely what the legislature intended to accomplish with chapter 32 of the 1982 session laws. The plaintiffs' contention that land conveyed to the State for a specific public use or benefit *can never* be used for other purposes, or disposed of by *any* governmental entity, plainly flies in the face of not only the explicit statutory language of RSA 4:39, but also well-established principles of law in this State:

"As sometimes expressed, the State holds [public waters] in trust for the public. But the public right is a state right which the legislature may control, take away or cede at its will.

'An individual may convey his property upon such terms and conditions consistent with law as he pleases. The power of the State cannot be less. It is sovereign except in so far as its powers are limited by the state and federal constitutions. No constitutional provision has been pointed out or discovered which denies to the state the power to convey whatever it has the right to convey— whether lands or franchises—upon such terms and conditions as to the legislature may seem fit.' *State v. Railroad*, 69 N.H. 35, 51. . . . '[W]hile in this state lakes, large natural ponds, and navigable rivers are owned by the people, and held in trust by the state in its sovereign capacity for their use and benefit, such use and benefit are not limited to navigation and fishery, but include all useful and lawful purposes; and . . . *the beneficiaries and the trustee, acting as a body politic, can authorize by their legislative agents even an extinguishment of the trust and an abandonment of the trust estate.' State v. Company*, 70 N.H. 458,

460. Citation of other authorities in support of this view is unnecessary. The view is too well grounded and unquestioned."

*St. Regis Co. v. Board*, 92 N.H. 164, 169–70, 26 A.2d 832, 837–38 (1942) (emphasis supplied); *see also Sibson v. State*, 110 N.H. 8, 10, 259 A.2d 397, 399–400 (1969). The plaintiffs' argument apparently rests on the assumption that the use of public lands is a "right" which lawfully elected representatives cannot alter for the good of the public. However,

"[s]ince the public right is not a private one, it follows that individual members of the public entitled to enjoy the right enjoy the right in a personal capacity only derivatively. Their rights are not property rights and are not vested. Strictly, the rights are more properly to be termed privileges, which may be taken away, altered or qualified. Aside from their treatment under the constitutional principle of equality, the privileges are all measured by the extent of the public right.

From the standpoint of reality, the existence of rights in the public as other than those of the State is only a legal concept. The public lacks even a legally created personality or entity."

*St. Regis Co. v. Board*, 92 N.H. at 170, 27 A.2d at 838; *see* N.H. CONST. pt. I, art. 8.

■■ Accordingly, it is clear that the legislature can constitutionally put public property to any proper public use, including the development of a hydroelectric generating facility which has, in fact, been heartily supported by the residents of the towns in the area. *See* N.H.S. JOUR. 824 (1982) (remarks of Senator Hough); *see also* N.H. CONST. pt. II, art. 5. We therefore view chapter 32 of the 1982 session laws as having legitimately authorized the use of State property for the planned facility.

■ We regard any "dedication" to which the Androscoggin land may arguably have been subject to have been validly abrogated by the legislature, to the extent necessary, for implementation of the Pontook project. Had the original grantor, Public Service Company, intended and created a recreational-use restriction on the property when it conveyed it to the State in 1967, the present legislative action would arguably have constituted a taking, as pointed out by the Company in its brief. We agree that in such a case, *see* RSA 4:30, some form of compensation might be required. The grantor in this case has, however, indicated that it never intended to, and does

not now, insist that the property be used *only* for recreational purposes, and we regard this as dispelling any lingering doubts as to the existence of the alleged exclusive dedication of the property.

The plaintiffs also argue that the legislation was intended to interfere with the hearing this court ordered in *Appeal of Lathrop*. We disagree. The legislation expressly states that the hearing ordered by this court should be held and conducted with standard administrative procedures and with due regard for the due process rights of all concerned. The legislative record makes clear that the bill referred specifically to the court-ordered rehearing in order to remove any qualms that the legislation would interfere with the orders of this court. *See* N.H.S. JOUR. 820 (1982) (remarks of Senator Sanborn). We believe the board properly understood itself to be dealing with the independent and separate issue of whether the project should be approved as being "of public use and benefit" as provided by RSA 482:21.

The plaintiffs also contend that the board's findings and order failed to meet minimum statutory standards; that they were unjust, unreasonable, and otherwise unlawful; that they were against the overwhelming weight of the credible evidence; and that they were not supported by the evidence presented to the board. This court does not sit as a trier of fact when reviewing orders of the water resources board. RSA 541:13 governs our standard of review and dictates that the board's order shall not be set aside, except for errors of law, unless this court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable. *See Appeal of Mountain Springs Water Co. Inc.*, 123 N.H. 655–56, 466 A.2d 915, 916 (1983); *Appeal of Town of Goffstown*, 121 N.H. 999, 1001, 437 A.2d 291, 293 (1981). The board's order evidences, and the record amply supports, that in determining whether the Pontook project was of public use and benefit, the board gave due consideration to its effect upon scenic and recreational values, fish and wildlife, and the natural flow of the water in the two-mile section below the dam. *See* RSA 482:21. We therefore reject the plaintiffs' claims to the contrary.

The plaintiffs' contention that the board was impermissibly tainted by a conflict of interest because it had a financial interest in the monies which may ultimately be generated by the Pontook project is similarly lacking in merit. The fact that monies generated by the Pontook project would benefit the State by providing income to repair dams under the supervision of the water resources board, *see* RSA 481:32; RSA 481:33, II (Supp. 1982), hardly constitutes a

substantial, direct and personal pecuniary interest which might serve to influence improperly the board's decision to grant or deny the Company a permit. *Cf. Tumey v. Ohio,* 273 U.S. 510, 523 (1927); *Ward v. Village of Monroeville,* 409 U.S. 57, 58 (1972).

 The plaintiffs' final claim is that the board's notice issued April 28, 1982, regarding the June 2, 1982, hearing, was fatally defective under both RSA 482:20 and the board's regulations because it failed to give notice of all applicable statutes governing the hearing. This argument lacks any substantive merit. Apart from the fact that chapter 32 of the Laws of 1982 was not passed until May 22, 1982, one month after the notice was first published, the legal notice of April 28, 1982, did specifically state that the hearing was to be conducted pursuant to RSA 482:16 to :22 and in response to this court's decision in *Appeal of Lathrop.*

As we stated above, the record before us clearly supports the conclusion that the hearing referred to in Laws of 1982, chapter 32, was the same hearing envisioned under our decision in *Appeal of Lathrop.* Therefore, on April 28, 1982, the plaintiffs did get notice of all the pertinent statutes under which the hearing would be conducted. Chapter 32 of the Laws of 1982 in effect merely duplicated this notice by again referring to *Appeal of Lathrop* as the applicable standard, a fact that the plaintiffs were specifically made aware of on April 28, 1982.

 In any event, we have previously held that "[w]e will not set aside an agency's decision for a procedural irregularity, however, unless the complaining party shows material prejudice." *Appeal of Concord Natural Gas Corp.,* 121 N.H. 685, 691, 433 A.2d 1291, 1295 (1981). Not only have the plaintiffs failed to explain how they were materially prejudiced by the alleged omission, but the June 2, 1982 hearing transcript indicates that they were prepared to and did express their objections to Laws of 1982, chapter 32. Their specific objection was that it pre-ordained the result of the very hearing they were attending. We have considered the plaintiffs' contention concerning the alleged prejudicial effect of Laws of 1982, chapter 32, on the court-ordered rehearing and determined that it is without merit.

Accordingly, transferred question 1 is answered "no."

We find it unnecessary to answer questions 2, 3, and 4, in light of our decision that any "dedication" to which the Androscoggin land may arguably have been subject was validly abrogated by the legislature to the extent necessary for implementation of the Pontook project.

For the foregoing reasons, the board's order is affirmed and the case transferred from superior court is remanded to that court for proceedings in accordance with this opinion.

*No. 82-413 affirmed; No. 82-561 remanded.*

KING, C.J., and SOUTER, J., did not sit; the others concurred.