Compensation Appeals Board
No. 94-186

## APPEAL OF FRANCOIS MORIN

### (New Hampshire Compensation Appeals Board)

December 19, 1995

*Merin Chamberlain*, of Manchester, by brief and orally, for the petitioner, Francois Morin.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Douglas N. Steere* and *Patrick C. McHugh* on the brief, and *Mr. Steere* orally), for the respondent, Riley's Sport Shop.

BROCK, C.J. The petitioner, Francois Morin, appeals from the denial of his workers' compensation claim by the compensation

appeals board (board). He argues that the board erred as a matter of law when it denied his timely motion to continue the hearing because his treating physician was out of the country. We reverse and remand.

The petitioner asserts that he was injured on February 3, 1992, while working at Riley's Sport Shop, a gun shop and shooting range. Morin, who was forty-three years old at the time of the injury, had been self-employed for twenty years as an electrician. He had worked at Riley's since 1991, usually ten hours a day. Prior to beginning employment at Riley's, he had not experienced any significant respiratory problems.

On the day of the injury, the owners had leased the facilities to a security firm, which had sent ten employees to qualify for shooting. The shooters used M-16 rifles and semi-automatic handguns from approximately 7:30 a.m. until 11:00 or 11:30 a.m. Although the shooting range was set up for recreational purposes, this security firm did not engage in recreational shooting. The firm's supervisor testified that he had never before, in his twenty-five years' experience, shot an M-16 indoors in a completely enclosed area.

Morin arrived at work at approximately 11:30 a.m., just as the shooters were finishing. He testified that he saw lead dust and powder covering the floors and walls of the range, in amounts and locations he had not seen before. The floor had to be washed several times. Morin's only protection while cleaning up the range was a paint mask purchased by his employer, which was not designed to filter toxic materials found on the range. Morin had to change the filters on the air system because they were clogged; he had changed them only three days previously, although the normal time between changes was six to eight weeks.

Morin started to feel sick that same day and was unable to work the following day. On the fourth day, he felt so sick that he went to the emergency room at Elliot Hospital, where a test revealed an elevated level of lead in his system. From that point on, Morin was referred from one physician to another, until December 1992, when he was seen by Dr. David Christiani, an occupational lung disease specialist at Massachusetts General Hospital. Dr. Christiani diagnosed Morin's problem as Reactive Airways Disease Syndrome (RADS), an asthma-like illness that arises after a single exposure to high levels of irritating toxins. Dr. Christiani continued to treat Morin for the disease.

Morin applied for workers' compensation benefits based on his contracting RADS as a result of his employment at Riley's. After a hearing, a hearing officer denied benefits. Morin timely appealed to

the board, which scheduled a hearing for June 15, 1993. On May 20, Morin filed a written request for a continuance of the hearing because Dr. Christiani was unavailable on that date. Several days after filing this request, Morin's counsel telephoned the labor department and was advised that the request to continue was denied. On May 25, Morin requested reconsideration, but that too was denied.

Morin then sought to hire a substitute expert physician and retained the services of Dr. Glenn Bricker. Prior to the hearing, the respondent, Riley's, filed an objection to Morin's presentation of Dr. Bricker as a witness. On the morning of the hearing, when Morin's attorney stated for the record that Morin had been denied a continuance, the board offered to continue the hearing until a date when Dr. Christiani could be present. At this point, with Dr. Bricker present and with other witnesses subpoenaed, Morin declined the board's offer. The respondent then withdrew its objection to Dr. Bricker's testifying.

The hearing went forward, and the board denied Morin's claim. The board refused to credit the written medical opinion of Morin's treating physician, Dr. Christiani, because the opinion incorrectly stated that Morin had been exposed to "a heavy plume of smoke for a two hour period." Instead, the board credited the consulting physicians who testified on behalf of Riley's but who had not treated Morin.

Morin filed a motion for rehearing, claiming that he was denied due process when the board denied his request to continue the hearing due to Dr. Christiani's being in China on the date scheduled for the hearing. The board denied the motion for rehearing. Morin now appeals the board's denial of benefits. Although the petitioner presents several arguments, we need address only one: whether the board erred when it denied Morin's motion to continue the evidentiary hearing on the grounds that his treating physician, Dr. Christiani, was unavailable. We hold that it did.

■■ Orders or decisions of the board "shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13 (1974); *Appeal of Kehoe*, 139 N.H. 24, 27, 648 A.2d 472, 474 (1994). In reviewing the board's exercise of its discretion, we will apply the same standards as we apply to a trial court's rulings. The board, like a trial judge, has broad discretion over the conduct of its proceedings, including its hearings. *See Attitash Mt. Service Co. v. Schuck*, 135 N.H. 427, 430, 605 A.2d 1067, 1069 (1992); *cf. Jamestown Mut. Ins. Co. v. Meehan*,

113 N.H. 639, 641, 312 A.2d 689, 691 (1973) (trial court has broad discretion). In particular, the question whether a continuance should be granted lies within the board's sound discretion. *See Tenn, Trustee v. 889 Associates, Ltd.*, 127 N.H. 321, 325, 500 A.2d 366, 369 (1985). But that discretion is not unlimited. The board may not abuse its discretion, even in matters of the manner and timing of a hearing. *Jamestown Mut. Ins.*, 113 N.H. at 641, 312 A.2d at 691; *see National Marine Underwriters v. McCormack*, 138 N.H. 6, 9, 634 A.2d 1008, 1010 (1993). As for a trial judge, abuse of discretion by the board constitutes legal error. *Hudson Bergen County R.L.S.A. v. Board of Com'rs of Hoboken*, 52 A.2d 668 (N.J. 1947); *see* RSA 541:13. If the board abuses its discretion—whether by making arbitrary decisions; by failing to comply with the requirements of its governing legislation or with its own rules and regulations; or by failing to follow fair procedures—then we "will not hesitate to reverse" the agency's decision. *Pitts v. White*, 109 A.2d 786, 788 (Del. 1954); *see National Marine*, 138 N.H. at 9, 634 A.2d at 1010; *Allegro v. Afton Village Corp.*, 87 A.2d 430, 432 (N.J. 1952).

■ We agree with the New Jersey Supreme Court: a court or an agency should not lose sight of its "paramount objective" of rendering justice. *Allegro*, 87 A.2d at 432. "The essence of judicial [or agency] discretion is the exercise of judgment directed by conscience and reason, as opposed to capricious or arbitrary action." *Pitts*, 109 A.2d at 788; *Hager v. Weber*, 81 A.2d 155, 160 (N.J. 1951). An agency, like a trial court, must follow fair procedures and provide due process. *Appeal of Lathrop*, 122 N.H. 262, 265, 444 A.2d 505, 506 (1982). Its discretion must be exercised "in a manner to subserve and not to impede or defeat the ends of substantial justice." *Sturman v. Socha*, 463 A.2d 527, 531 (Conn. 1983) (quotation omitted). One element of this requirement is the opportunity to present one's case—to attempt to meet one's burden of proof— in a fair manner before an impartial fact-finder. *See Lathrop*, 122 N.H. at 265, 444 A.2d at 506.

■ Further, in exercising its discretion, an administrative agency must follow its own rules and regulations. *Attitash Mt. Service*, 135 N.H. at 429-30, 605 A.2d at 1069. While deference is accorded to an agency's interpretation of its regulations, that deference is not total. A reviewing court must still examine whether the agency's interpretation "is consistent with the language of the regulation and with the purpose which the regulation was intended to serve." *Appeal of Alley*, 137 N.H. 40, 42, 623 A.2d 223, 224 (1993) (quotation omitted).

An agency, like a trial court, must also comply with the governing statute, in both letter and spirit. *Cf. Sturman v. Socha*, 463 A.2d at 531. In this case, the governing statute is the Workers' Compensation Law, RSA ch. 281-A (Supp. 1994), which "is to be construed liberally in order to give the broadest reasonable effect to the remedial purpose of the workers' compensation law," *Whittemore v. Sullivan Cty. Homemaker's Aid Serv.*, 129 N.H. 432, 435, 529 A.2d 919, 921 (1987), with "all reasonable doubts . . . resolved in favor of the injured employee." *Ranger v. N.H. Youth Dev. Center*, 117 N.H. 648, 652, 377 A.2d 132, 135 (1977).

■ Our liberal construction of the statute has resulted in "a series of cases expressing expansive interpretations of the statutory criteria for coverage." *Murphy v. Town of Atkinson*, 128 N.H. 641, 645, 517 A.2d 1170, 1172 (1986). Just as we have expansively construed the criteria for coverage, we have also required the board to be more generous in applying its procedural criteria as well, bearing in mind that the board's role is to serve the broad remedial purpose of the statute. *See, e.g., Petition of Markievitz*, 135 N.H. 455, 458, 606 A.2d 800, 802 (1992) (liberally construing the definition of when a claim arises).

■■ Here, the board's denial, without good cause, of Morin's reasonable and timely motion to continue did not conform to that broad purpose. The board's denial resulted in Morin's inability to have his treating physician present to testify before the board. Treating physicians are especially important in a workers' compensation case: "[b]ecause a claimant's treating physicians have great familiarity with his condition, their reports must be accorded substantial weight." *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987). In Morin's case, after learning about one discrepancy in the apparent premise of Dr. Christiani's written opinion, the board rejected the doctor's entire opinion and, with it, Morin's claim, concluding that Morin had failed to meet his burden of proof. That discrepancy involved the amount of exposure to toxic substances. *Cf. Kehoe*, 139 N.H. at 26, 648 A.2d at 474 (the amount of exposure is "immaterial" as long as it is sufficient to produce the disease in this particular individual). In any event, since Dr. Christiani was not present to be cross-examined, he was not able to explain the discrepancy nor to discuss whether or how the differing information would alter his conclusion that Morin's work-related exposure was sufficient to cause his disease.

New Hampshire Department of Labor Rule 203.05 states:

> If a continuance of a hearing is necessary, the party
> requesting the continuance shall file with the department or

> panel, a written request for such continuance at least 7 days prior to the hearing, with a copy to all parties. A continuance shall not be granted if such a written request is not made. Thereafter, a continuance shall be granted only if the commissioner finds that a compelling need exists.

The rule does not indicate whether the board *must* grant a motion to continue if it is timely filed. Nor does the rule set forth standards for the board's exercise of its discretion in deciding such a motion. The last sentence of the rule, however, is informative: even if the claimant *fails* to meet the seven-day rule, the board still will grant a continuance if there is a "compelling need." *Id.* We think a fair reading of the entire rule envisions at least as generous treatment for a claimant who *does* comply with the seven-day notice requirement as one who *fails* to comply. Such a reading conforms with the purpose of the board's rules:

> to . . . assure the conduct of a *full, fair and adequate exposition* of issues and the expeditious resolution of disputes. These rules shall be construed to secure the *just,* speedy and inexpensive determination of every proceeding.

N.H. ADMIN. RULES, Lab. 202.01 (emphasis added); *see also* N.H. ADMIN. RULES, Lab. 206.05(d) (the board must "conduct the hearing in such a manner as to best ascertain the rights of the parties").

Although the board is not obligated to grant every motion to continue, it must exercise sound discretion, cognizant of the broad remedial purpose of the Workers' Compensation Law. In the circumstances of this case, however, the board abused its discretion in denying Morin's reasonable and timely motion to continue, which was based upon legitimate grounds. If there was a reasonable justification for denying the motion, such as material prejudice to other parties, then the board should have made a record of its reasons for denying the continuance to assist us in evaluating whether the agency abused its discretion. *Cf. N.H.-Vt. Health Serv. v. Comm'n of Ins.*, 122 N.H. 268, 273, 444 A.2d 508, 511 (1982). This is especially true for continuances filed more than seven days in advance of a scheduled hearing. It seems particularly unfair that the board's actions made it more difficult for Morin to meet his burden of proof in a case like this, where that burden involves proof of a complicated and little known illness, and the treating physician was a known expert in the field. Since the board apparently "lost sight of [its] paramount objective" of rendering justice, *Allegro*, 87 A.2d at 432, we hold that the board abused its discretion.

The respondent contends that Morin waived this claim because Morin declined the board's offer, on the day the hearing began, to continue the hearing until Dr. Christiani could be present. This Hobson's choice was no choice at all. After the board twice denied Morin's motions to continue prior to the hearing, Morin hired a new expert witness who was present and ready to testify at the hearing, as were other witnesses who had been subpoenaed. Even though no substitute physician could adequately replace Morin's treating physician, *see Poulin*, 817 F.2d at 873, the substitute was already present at the hearing, thereby causing Morin to incur the expense of the doctor's time for preparing and appearing even if Morin accepted the board's eleventh-hour offer of a continuance. In such circumstances, we hold that such an eleventh-hour offer is insufficient to cure the damage caused by the board's abuse of discretion in denying the continuance at the earlier, more appropriate time.

*Reversed and remanded.*

THAYER and BRODERICK, JJ., did not sit; JOHNSON, J., concurred; HORTON, J., dissented.

HORTON, J., dissenting: The majority reverses and remands to the compensation appeals board for a new hearing. It bases this action on the board's denial of a continuance to the petitioner. It makes two points in its holding of error in denying the continuance. The first is that the board abused its discretion in denying the continuance when requested by the petitioner in a timely fashion. The second is that the board's offer of a continuance at the beginning of the hearing was too late, and, therefore, the petitioner's election to proceed with the hearing, rather than accept the offer of a continuance, should not be construed as a waiver of the petitioner's right to make this claim on appeal. I disagree with both points.

No principle of administrative law is more firmly established than that of agency control of its own calendar. There is no doubt that continuances can upset an agency's attempts to control its workload and to dispose of the cases before it expeditiously. Agencies must be, and are, given discretion in procedural decisions made in carrying out their statutory mandate. Specifically, the denial of a continuance is a discretionary act and reviewable only to determine whether there has been an abuse of discretion. . . . By its very nature, "good cause" requires the evaluation of a number of subtle factors, a task properly given to the

administrative agency most experienced in dealing with such factors in the first instance.

*Ammerman v. Dist. of Col. Rental Accom. Com'n*, 375 A.2d 1060, 1063 (D.C. 1977) (quotation and citation omitted); *see Hanover Convalescent Center Corp. v. Town of Hanover*, 116 N.H. 142, 144, 355 A.2d 414, 416 (1976). Our role is not to determine whether we would have granted the continuance, but whether the denial lies within the sound discretion of the board. Does the action of the board go beyond a reasonable and just application of its discretion?

Careful consideration is due to measure this question in light of the action of the board—when and how it acted. The board is directed, by statute, to discourage continuances. *See* RSA 281-A:43, I(b) (Supp. 1994). The board's administrative process permits full use of written medical evidence, N.H. ADMIN. RULES, Lab 510.02, and, in practice, much of the evidence considered by the board is in the form of medical reports, rather than live testimony. The rules of evidence are not applicable to these proceedings. RSA 541-A:33, II (Supp. 1994).

The board received a timely request for a continuance from an attorney replacing the attorney who represented the petitioner before the hearing officer. It cited three grounds for a continuance, but the one material to this appeal stated, "3. Our medical expert, Dr. Christiani, will not be available until July 14, and will be available July 14, 15 and 16." There is no mention in the record of Dr. Christiani's being in China, or of any other reason advanced for his unavailability and no indication that the hearing could not go forward on the written medical reports in the board's file. In fact, a suggestion is made that the docket of the board allocate three days in July for the hearing to accommodate the doctor. The motion for reconsideration of the denial adds nothing to the picture on this issue. On the basis of this request, in light of the factors set forth above, I would be unable to hold that the denial was an abuse of discretion.

On the first day of the hearing, it appears that the board chairman was enlightened on the reasons for the absence of Dr. Christiani and on his role in the hearing. Treating the motion for continuance as still pending, he offered to continue the hearing and to make available the dates in July that would accommodate the doctor's schedule. The petitioner elected to proceed with the hearing without Dr. Christiani. The chairman stated these facts for the record and stated that he was treating the revived motion for continuance as withdrawn. Counsel for the petitioner stated, "I believe that that's correct." I would hold this to be an effective waiver of the

continuance claim, the "Hobson's choice" drawn by the majority being one substantially of the petitioner's creation.

For the foregoing reasons, I respectfully dissent.