Compensation Appeals Board
No. 2001-400

### APPEAL OF THOMAS WINGATE

### (New Hampshire Compensation Appeals Board)

Argued: September 18, 2002
Opinion Issued: December 27, 2002

*Borofsky, Amodeo-Vickery & Bandazian, P.A.*, of Manchester (*Mark S. Gearreald* and *Christopher A. Bandazian* on the brief, and *Mr. Gearreald* orally), for the claimant.

*Desmarais, Ewing & Johnston, PLLC*, of Manchester (*Scott A. Ewing* and *Heather G. Silverstein* on the brief, and *Mr. Ewing* orally), for the respondent.

BRODERICK, J. The claimant, Thomas Wingate, appeals a decision of the New Hampshire Compensation Appeals Board (board) denying his request for payment of a medical bill incurred more than a decade after his 1988 workplace injury. He argues that the respondent, Hansen Fox Company, Inc., should have been estopped from contesting the causal relationship between his back condition treated in 2000 and his 1988 compensable work injury. We vacate in part, reverse in part and remand.

We recite the facts found by the board, presented in the record, or undisputed by the parties. In January 1988, the claimant injured his lower back while employed as a pipe fitter for the respondent. His workers' compensation claim was accepted and benefits were paid. The claimant was treated by Dr. James M. Shea, an orthopedic physician, who diagnosed a "central bulging or herniation of a mild to moderate degree at L5-S1." The claimant participated in physical therapy for three months and took disability leave from work in 1988 and 1989. Dr. Shea recommended that he perform daily back exercises and use a back support in his car. The doctor also prescribed pain medication.

The claimant was last examined by Dr. Shea in 1990. Thereafter, he experienced low back pain several times per year, for which he took a prescribed pain medication. Dr. Shea last renewed the claimant's prescription in August 1996. After Dr. Shea retired, the claimant was treated by Dr. Michael J. O'Connell. In February 1999, Dr. O'Connell concluded that the claimant suffered from "[d]egenerative L5-S1 disc disease with chronic recurrent lower back pain."

When the respondent's insurance carrier denied payment for Dr. O'Connell's 1999 bill, the claimant requested a hearing before the New Hampshire Department of Labor (DOL) pursuant to RSA 281-A:23 (1999). While his hearing request was pending, the claimant suffered another episode of back pain and, in early March 2000, he saw Dr. Louis Candito, who diagnosed "[d]egenerative disc disease lumbar spine."

In late March, the DOL conducted a hearing to determine the respondent's obligation to pay Dr. O'Connell's medical bill. It found that the bill was the employer's responsibility because Dr. O'Connell's treatment was a consequence of "[the claimant's] recurring lower back problem stemming from the 1988 work injury." It ruled that the claimant had met his burden of proof by demonstrating that the bill was "causally related, reasonable, and necessary treatment for [his] lower back condition." The respondent took no appeal from this decision.

The respondent subsequently refused to pay Dr. Candito's bill, again contending that the claimant's back condition, for which he sought treatment, was not caused by the 1988 work injury. The claimant requested a hearing before the DOL, which found the bill compensable,

reasoning that "the claimant has suffered no new injury since January 8, 1988, that his back condition has never stabilized, and that Dr. Candito found the claimant's condition causally related to the original injury." The respondent appealed to the board.

Prior to the hearing before the board, the claimant filed a motion for summary judgment asserting that the earlier unappealed decision of the hearing officer concerning Dr. O'Connell's 1999 bill estopped the respondent from disputing the causal relationship between that same back condition treated by Dr. Candito in 2000 and the 1988 work injury. The board denied the motion and after a hearing, found Dr. Candito's bill unrelated to the original work injury treatment. It reasoned:

> In coming to this conclusion, the Panel relies on the competent medical evidence of Dr. O'Connell and Dr. Candito, two treating physicians of the claimant. In both doctors' reports, they state that the claimant's current problems are degenerative in nature and they do not relate the claimant's injury in 1988 to his current condition. Further, the Panel is troubled by the fact that the claimant had failed to treat with any physician for a period of approximately eight or nine years.

The claimant's motion for reconsideration was denied, and this appeal followed.

The claimant argues that the respondent should not have been allowed to relitigate the causal relationship between his 1988 work injury and his back treatment by Dr. Candito in March 2000 because the DOL had previously ruled compensable Dr. O'Connell's 1999 bill for treatment involving the same degenerative condition. He contends that in the earlier proceeding involving O'Connell's bill, the respondent fully contested the causal relationship between his back condition and the 1988 work injury, and failed to appeal the DOL's adverse ruling. Because the respondent offered no evidence of a superseding injury involving his back since Dr. O'Connell's 1999 treatment, the claimant argues that the board erred as a matter of law in considering the causal relationship between his back condition treated in 2000 by Dr. Candito and his 1988 work injury.

"We will [not] overturn the board's decision [unless we find] errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the order is unjust or unreasonable." *Appeal of Jamar*, 145 N.H. 152, 154 (2000). The issue of whether the respondent should have been collaterally estopped from litigating causation is a matter of law, *Farm Family Mut. Ins. Co. v. Peck*, 143 N.H. 603, 605 (1999), that we review *de novo*, *Byblos Corp. v. Salem Farm Realty Trust*, 141 N.H. 726, 729 (1997).

■ This case involves the respondent's responsibility to pay Dr. Candito's bill for treating the claimant's back condition as it existed in March 2000. Under RSA 281-A:23, I:

> An employer subject to this chapter, or the employer's insurance carrier, shall furnish or cause to be furnished to an injured employee reasonable medical, surgical, and hospital services, remedial care, nursing, medicines, and mechanical and surgical aids for such period as the nature of the injury may require.

"Thus, an employer has a continuing obligation to provide or to pay for medical, hospital, and remedial care for as long as is required by an injured employee's condition where it bears liability for the initial injury that necessitated the subsequent health care." *Appeal of Bergeron*, 144 N.H. 681, 684 (2000) (quotation omitted). The injured employee bears the burden of proving that the subsequent medical treatment is reasonable and required as a result of the injury. *Appeal of Levesque*, 136 N.H. 211, 214 (1992). A claimant is entitled to compensation for medical treatment only so long as the condition or disability requiring the treatment is causally related to the initial compensable injury. *See Appeal of Sutton*, 141 N.H. 348, 350 (1996); *cf. Appeal of Hiscoe*, 147 N.H. 223, 231 (2001).

The board denied coverage for Dr. Candito's medical bill, ruling not only that the claimant's back condition was not causally related to his 1988 work injury, but also that the bill was not reasonable or necessary. Ordinarily, the latter grounds for rejecting the bill would be sufficient. The only issue properly before the board, however, was causation. In the respondent's denial letter regarding Candito's bill, it solely contested the causal relationship between the treatment underlying the medical bill and the 1988 work injury. There is no evidence on the record before us that the respondent presented any other issue to the DOL. Indeed, in its decision, the DOL rendered specific findings on causation and offered no discussion on the reasonableness or necessity of Candito's bill, and no other document involving the DOL proceeding is before us. Finally, during the hearing before the board, the respondent did not dispute the reasonableness or necessity of Candito's bill. Accordingly, we vacate the board's ruling concerning the reasonableness and necessity of Dr. Candito's bill, and turn to the propriety of its causation ruling.

The doctrine of collateral estoppel precludes parties, or those in privity with them, from relitigating in a subsequent action any issue that was actually litigated in a prior proceeding where they were also parties. *Appeal of Manchester Transit Auth.*, 146 N.H. 454, 461 (2001). For collateral estoppel to apply, "the issue subject to estoppel must be identical in each action, the first action must have resolved the issue finally on the

merits, and the party to be estopped must have appeared in the first action, or have been in privity with someone who did." *Simpson v. Calivas*, 139 N.H. 1, 7 (1994) (quotation omitted). "Further, the party to be estopped must have had a full and fair opportunity to litigate the issue, and the finding must have been essential to the first judgment." *Id.* (citation omitted).

The identity of parties and finality of judgment components of estoppel are easily satisfied in this case. *See* RSA 281-A:43, I(b) (1999) (party has thirty days from decision of DOL to appeal to board). The parties dispute, however, whether the claimant satisfied his burden to prove that the causation issue related to the 2000 medical bill was identical to the causation issue determined in connection with the 1999 medical bill. *See Appeal of Hooker*, 142 N.H. 40, 44 (1997) (party asserting estoppel bears burden of proof). To resolve this dispute, we must first determine whether the causation issue that was actually litigated in relation to the 1999 bill was essential to the DOL's ruling, and compare it to the causation issue disputed in relation to the 2000 bill.

The DOL found that the claimant treated with Dr. O'Connell "for a recurring lower back problem stemming from the 1988 work injury," and that "the claimant met his burden of proof that the medical bill submitted ... [was] causally related, reasonable, and necessary treatment for the claimant's lower back condition."

We conclude that the respondent actually litigated and the DOL necessarily decided the causal relationship between the claimant's 1988 work injury and his 1999 back condition diagnosed and treated by Dr. O'Connell. The respondent disputed causation by asserting that the claimant had not undergone treatment for ten years prior to his visit with Dr. O'Connell and that he must have suffered a new injury in the interim. The DOL rejected this argument, and the respondent makes no assertion that it was deprived of an opportunity to fully and fairly litigate the causal relationship between the degenerative disc disease diagnosed by Dr. O'Connell and the 1988 work injury.

Further, the DOL's ruling that the claimant's "recurring lower back problem stemm[ed] from the 1988 work injury" necessarily related Dr. O'Connell's diagnosis of "degenerative L5-S1 disc disease" to the initial compensable injury. In its factual findings, the DOL referenced the 1988 work injury and medical test showing a "bulging or herniation" at the L5-S1 spinal area. It found that when the claimant last saw Dr. Shea in 1990, his herniated disc condition was considered "under control" but that he continued to obtain prescriptions for pain relief from Dr. Shea's office throughout the 1990s. It noted Dr. O'Connell's diagnosis of "degenerative L5-S1 disc disease with chronic recurrent lower back pain" and cited no

other source for the claimant's back problem. It also specifically found that "[t]here is no evidence that the claimant has ever suffered a new injury and no evidence that his symptoms have ever resolved except for brief periods." Because an employer, and its carrier, are not responsible for subsequent health care precipitated by a disability or condition unrelated to the job injury, *see Appeal of Sutton*, 141 N.H. at 350-51, the causal relationship between the claimant's diagnosed degenerative condition with recurring back pain and the 1988 work injury was essential to the DOL's ruling. Therefore, the doctrine of collateral estoppel precludes the respondent from relitigating that issue.

For the DOL's causation ruling concerning Dr. O'Connell's 1999 bill to have a preclusive effect upon the proceeding involving Dr. Candito's 2000 bill, however, the same back condition must have been treated by Dr. Candito. *See Appeal of Hooker*, 142 N.H. at 44. Thus, we next consider the nature of the claimant's back condition diagnosed by Dr. Candito.

Dr. Candito reviewed the same medical history as outlined by the DOL when it ruled upon Dr. O'Connell's bill. Dr. Candito noted the 1988 work injury, the 1988 medical test indicating that the claimant suffered a central bulging of a mild to moderate degree at the L5-S1 level, and his periodic episodes of back pain occurring for more than a decade following his work injury. Ultimately, Dr. Candito diagnosed the claimant as suffering from "[d]egenerative disc disease lumbar spine," and recommended that the claimant take steps "to help prevent episodes of recurrence." A workers' compensation medical form signed by Dr. Candito refers to his diagnosis as, in part, "[d]egen[erative] disc disease L5-S1."

While worded slightly differently than Dr. O'Connell's diagnosis of "degenerative L5-S1 disc disease with chronic recurrent lower back pain," the record and the board's findings establish that the two doctors' diagnoses are identical in substance. Dr. Candito noted that the back pain precipitating his examination occurred "spontaneously," and made no mention of any separate event or independent source causing the claimant's symptoms. Further, the board determined that both O'Connell and Candito described the claimant's back problem as "degenerative in nature," and made no distinction between the two doctors' diagnoses. While an independent medical examiner, Dr. David Publow, opined that the claimant has an "underlying degenerative disc disease, possibly with an additional mild congenital malformation of the lower lumbar spine" which was not caused by the 1988 work event, and that his back problems, as recorded by Drs. O'Connell and Candito, were not related to the 1988 work event, he did not differentiate the claimant's back condition as treated by both physicians. Indeed, the board expressly found that Dr. Publow "[did] not distinguish between Claimant's compensable

degenerative L5-S1 disc disease [evaluated by Dr. O'Connell] and [his] degenerative L5-S1 disc disease when he saw Dr. Candito [in March 2000]."

There is no evidence in the record indicating that the claimant's back condition treated by Dr. Candito differed from the condition diagnosed by Dr. O'Connell which the DOL found causally related to the 1988 work injury. The claimant testified without contest before the board that between doctor visits, he did not incur any new injury or exertion causing a problem to his back, and the respondent made no claim that the 2000 back condition resulted from an independent cause. *See Appeal of Bergeron*, 144 N.H. at 684. While the board stated that Drs. O'Connell and Candito did not "relate the claimant's injury in 1988 to his current [degenerative disc disease] condition," the DOL conclusively established this causal connection concerning Dr. O'Connell's diagnosis, and the board was not at liberty to review this unappealed decision. Further, the board's statement that it was "troubled by the fact that the claimant had failed to treat with any physician for a period of approximately eight or nine years" (between treatment with Dr. Shea in 1990 and with Dr. O'Connell in 1999), standing alone, cannot serve as a basis for distinguishing the claimant's 1999 and 2000 back conditions. *See id.* at 686.

Finally, the existence of the independent medical examiner's report opining that the claimant's degenerative disc disease was not caused by the 1988 work event does not create an opportunity for the respondent to relitigate an issue finally determined by a DOL hearing officer in a prior proceeding. Its opportunity to contest the relationship between the claimant's degenerative disc disease and the 1988 work injury, through an independent medical examiner or otherwise, occurred in connection with Dr. O'Connell's 1999 bill, when the DOL hearing officer heard the issue and the respondent had the opportunity to appeal *de novo* to the board. *See Appeal of Levesque*, 136 N.H. at 214 (appeals to board are heard *de novo*).

■ Therefore, we conclude that the record establishes that the claimant suffered from the same back condition in 2000 when he treated with Dr. Candito as the DOL found he suffered in 1999 when he saw Dr. O'Connell. Accordingly, the board erred as a matter of law in permitting the respondent to relitigate whether the claimant's degenerative disc disease was causally related to his 1988 work injury.

*Vacated in part; reversed in part; and remanded.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.