NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Compensation Appeals Board
No. 2019-0464

APPEAL OF LAURA LEBORGNE
(New Hampshire Compensation Appeals Board)

Argued: June 3, 2020
Opinion Issued: August 12, 2020

Cleveland, Waters and Bass, P.A., of Concord (Mark D. Wiseman and Callan E. Sullivan on the brief, and Mr. Wiseman orally), for the petitioner.

Devine, Millimet & Branch, Professional Association, of Manchester (Eric G. Falkenham on the brief and orally), for the respondent.

HANTZ MARCONI, J. The petitioner, Laura LeBorgne, appeals a decision of the New Hampshire Compensation Appeals Board (CAB) upholding the denial of her request for reimbursement for massage therapy that she received in New York to treat an injury suffered while working for the respondent, Elliot Hospital. She argues that the CAB erred in finding that she failed to satisfy her burden to prove that the treatment was reasonable, necessary, and related to her workplace injury, and in applying the requirements of RSA 281-A:23, V(c) (2010) to her case. We reverse and remand.

I

The following facts were found by the CAB or are undisputed in the record. In May 2011, while working as a nurse for the respondent, the

petitioner was injured when she was transitioning a patient from a chair to a bed. The petitioner reported feeling sudden and severe pain in her jaw, neck, shoulder, and upper right side of her body. Shortly thereafter, the petitioner was diagnosed with a trapezius strain and was initially prescribed a combination of ice, physical therapy, and trigger point injections. This treatment failed to fully control the petitioner's pain, and she reported feeling as though she had "hit a wall and was not improving," and that she needed to see a specialist. She was prescribed several types of medications, including muscle relaxers and opioids, but the relief they provided was not significant enough to "resume life."

Between 2012 and 2016, the petitioner was consistently treated with opioids to control her pain though the petitioner reported that these medications did not help and she had difficulty sleeping. She was also treated with physical therapy, trigger point injections, and acupuncture during this time. As of 2016, the petitioner's treating physician in New Hampshire had diagnosed her with "chronic myofascial pain of [the] right cervical spine and shoulder girdle" and stated that he was weaning her off opioid medications. Her doctor had also prescribed chiropractic treatments and massage therapy, and reported that this regimen of treatment was "necessary to maintain her daily function."

The petitioner subsequently moved to New York, where she currently resides, and started seeing Dr. Charles Kim, an orthopedic pain specialist. He took the petitioner off opioid medications, prescribed a new muscle relaxer, and ordered the continuance of massage therapy. Not all of Kim's contemporaneous treatment notes reference massage therapy. Kim later wrote two letters summarizing the petitioner's treatment plan and stating his medical opinion that the massage therapy the petitioner had undergone was reasonable and necessary in managing the petitioner's work-related injury. In a June 2018 letter, Kim explained that he was seeing the petitioner for "treatment and management of right shoulder pain/right upper back pain" and highlighted that she had been completing weekly deep tissue massages, which in combination with other treatment provided a "significant decrease in pain." Kim further opined, "It is medically necessary that [the petitioner] continue with weekly deep tissue massages with [a] licensed massage therapist as this has been an intricate part of her rehabilitation and management of pain since 2012." In his letter dated September 2018, Kim further stated,

It is my medical opinion that the weekly massage therapy is reasonable and necessary in managing chronic shoulder pain from [the petitioner's] work related injury. Massage therapy improves mobility, circulation and helps decrease pain. Her current treatment plan has significantly improve[d] her quality of life and

2

mental health and enables her to manage pain without the use of narcotics.

The petitioner reported to the CAB that she still experiences pain "24/7," her baseline for pain is a 4 out of 10, and she experiences flare-ups where the pain jumps to a 6 or 7 out of 10. However, the petitioner also reported that the combination of the new muscle relaxer and the continued massage therapy has led to a better quality of life, and that she can sleep now and is no longer in a "fog" due to the opioid medications. The petitioner was still being treated by Kim at the time of the CAB's hearing.

The treatments at issue are the massage therapy that the petitioner received in New York from two licensed massage therapists (LMTs) from May 2017 to January 2018. The petitioner received deep tissue massages with myofascial release in sixty-minute sessions, once a week, with a focus on her right shoulder. She reported that the massage therapy has maintained her baseline pain level of 4 out of 10 and that she tries not to miss a treatment.

Prior to the start of the petitioner's treatments in New York, the respondent had covered the cost of her massage therapy. In New York, however, the petitioner paid for her treatments out of pocket, purchasing sessions in blocks of 10 because it was less expensive, and including a customary 20% tip. In 2017, the petitioner requested reimbursement for her massage therapy treatment in New York, submitting the bills that she had paid for personally. Her claim was denied, and the petitioner requested a hearing with the New Hampshire Department of Labor to review this decision. After a hearing, the department hearing officer concluded that the petitioner's "claim for reimbursement shall remain denied." See RSA 281-A:43, I(a) (2010). The petitioner appealed the hearing officer's decision to the CAB. See RSA 281-A:43, I(b) (2010).

Prior to the department hearing, Dr. Andrew Farber met with the petitioner and conducted an Independent Medical Examination (IME). Farber spent five minutes with the petitioner and reviewed her medical records. He reported that "[t]here is no need for further physical therapy or surgical treatment," but also stated that the petitioner had not reached a "maximum medical endpoint." Farber concluded that the petitioner's ongoing massage therapy treatment was "excessive" and "[t]herefore, . . . was not reasonable, related or medically necessary to her [2011] injury."

For her hearing before the CAB, the petitioner provided evidence of her medical history, including treatment records from her previous doctors, Kim's contemporaneous treatment notes and opinion letters, treatment records from the two New York LMTs, and letters from the LMTs explaining their training and qualifications. The evidence provided to the CAB also included Farber's

3

IME report and the petitioner's testimony.  Following the hearing, the CAB concluded "[o]n the issue of RSA 281-A:23, . . . the [petitioner] has not met her burden of proof to show by a preponderance of the evidence that the medical treatments . . . are reasonable, medically necessary, and [causally] related to her workplace injury on May 19, 2011."  In its discussion, the CAB stated:

> The panel finds that Ms. LeBorgne was a credible witness.  It also gives Dr. Kim's medical opinions and recommendations substantial weight as a treating physician, but found the fact that massage therapy was missing from several of his notes disturbing.  Dr. Kim does explain the treatment plan more clearly in two letters that were written at the request of the [petitioner].  We also find that Dr. Kim's medical opinions to be slightly more reasonable and sounder than those of Dr. Farber, who is an independent medical examiner that only spent five minutes with the [petitioner] and conducted a review of her medical records.

(Record citations omitted.)  The CAB continued:

> However, the [respondent] argued that the [petitioner] did not meet her burden of proof, and that the treatment was not reasonable.  It further argued that it did cover [prior] massage therapy . . . because those Licensed Massage Therapists . . . did complete the required workers compensation form for the State of New Hampshire.  However, the [respondent] argues that the claim should be denied, because the New York LMTs did not complete or submit the workers compensation form . . . .

The CAB discussed and applied the requirements of RSA 281-A:23, V(c), and evaluated whether the petitioner met the statute's "good cause" exception to waive the requirement for submission of the New Hampshire Workers' Compensation Medical Form (form) within 10 days of the first treatment.  The CAB determined that there was not good cause to waive the 10-day reporting requirement.

The petitioner filed a motion for a rehearing, to which the respondent objected.  The CAB denied the petitioner's motion, and this appeal followed. See RSA 281-A:43, I(c) (2010).

II

We will not disturb the CAB's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable.  Appeal of Panaggio, 172 N.H. 13, 15 (2019); see RSA 541:13 (2007).  As the appealing party, the petitioner has the burden of demonstrating

4

that the CAB's decision was erroneous.  Appeal of Panaggio, 172 N.H. at 15.  All findings of the CAB upon questions of fact properly before it are deemed to be prima facie lawful and reasonable.  Id.; see RSA 541:13.  Thus, we review the CAB's factual findings deferentially.  Appeal of Panaggio, 172 N.H. at 15.  We review its statutory interpretation de novo.  Id.

On appeal, the petitioner argues that the CAB erred by improperly considering the failure of her massage therapists to submit the form required by RSA 281-A:23, V(c) in making its determination that the massage therapy treatment itself was not reasonable, necessary, and related to her workplace injury.  The respondent counters that the CAB's analysis of the requirements under RSA 281-A:23, V(c) amounted to a separate and alternative finding barring the petitioner from receiving reimbursement.  These arguments arise from conflicting interpretations of the CAB's decision.  The interpretation of the CAB's decision presents a question of law, which we review de novo.  See Guy v. Town of Temple, 157 N.H. 642, 649 (2008).  Based upon our review of the CAB's decision, we agree with the petitioner that the CAB erroneously considered noncompliance with RSA 281-A:23, V(c) in its determination of whether the treatment was reasonable, necessary, and related to her workplace injury.

The relevant provisions of New Hampshire's Workers' Compensation Law are contained in RSA 281-A:23 (Supp. 2019).  Pursuant to paragraph I of this statute, "[a]n employer subject to this chapter . . . shall furnish or cause to be furnished to an injured employee reasonable medical . . . services . . . for such period as the nature of the injury may require."  RSA 281-A:23, I.  Thus, an employer has a continuing obligation to pay for medical care for as long as is required by an injured employee's condition when it bears liability for the initial injury that necessitated the subsequent health care.  Appeal of Wingate, 149 N.H. 12, 15 (2002).  The claimant bears the burden of proving that the subsequent medical treatment is reasonable and required as a result of the injury.  Id.  The claimant is entitled to compensation for medical treatment only so long as the condition or disability requiring the treatment is causally related to the initial compensable treatment.  Id.  Thus, to obtain reimbursement for medical treatment under RSA 281-A:23, I, the claimant must prove that the treatment is reasonable, necessary, and related to the workplace injury.  See id.

A brief description of RSA 281-A:23, V is also necessary to put the CAB's decision in context.  The New Hampshire Workers' Compensation Medical Form was developed pursuant to paragraph V as the "form on which health care providers and health care facilities shall report medical, surgical or other remedial treatment."  RSA 281-A:23, V(b).  The report shall include, but is not limited to, information relating to the medical status of the employee and the employee's ability to return to work, "and any other information to enable the

employer or insurance carrier to determine the benefits, if any, that are due and payable." Id. Subparagraph V(c) provides in relevant part:

> The commissioner may assess a civil penalty of up to $2,500 on any health care provider who without sufficient cause, as determined by the commissioner, bills an injured employee or his or her employer for services covered by insurers or self-insurers under this chapter. <u>There shall be no reimbursement for services rendered, unless the health care provider or health care facility giving medical, surgical, or other remedial treatment furnishes the report required in subparagraph (b) to the employer, insurance company, or claims adjusting company within 10 days of the first treatment</u>. . . . The employer, claims adjustment company, self-insurer or insurer shall pay the health care provider or health care facility within 30 days of receipt of a bill for services.

RSA 281-A:23, V(c) (emphasis added).

Turning now to the CAB's decision, we conclude that it cannot be fairly characterized as having articulated two separate and alternative rulings — the first on the issue of the petitioner's burden to prove the treatment was reasonable, necessary, and related to her workplace injury; and the second on the issue of the requirements of RSA 281-A:23, V(c). The CAB's conclusion is limited to a decision "[o]n <u>the issue</u> of RSA 281-A:23." (Emphasis added.) That conclusion, in its entirety, was that the petitioner had "not met her burden of proof to show by a preponderance of the evidence that the medical treatments . . . are reasonable, medically necessary, and [causally] related to her workplace injury." In reaching this conclusion, the CAB gave "Dr. Kim's medical opinions and recommendations substantial weight as a treating physician," see Appeal of Morin, 140 N.H. 515, 519 (1995), and found his opinions to be "slightly more reasonable and sounder than those of Dr. Farber," who the CAB noted "only spent five minutes with the" petitioner and reviewed her medical records. The CAB also found that the petitioner, who testified to the benefits of massage therapy as part of her ongoing treatment plan to manage her work-related injury, "was a credible witness."

The CAB then transitioned to a discussion of RSA 281-A:23, V(c), beginning its analysis by saying, "However, the [respondent] argued that the [petitioner] did not meet her burden of proof, and that the treatment was not reasonable." Immediately thereafter, the CAB specifically noted the respondent argued that it covered prior massage therapy "because those Licensed Massage Therapists . . . complete[d] the . . . workers compensation form for the State of New Hampshire," as required by RSA 281-A:23, and further argued that the petitioner's current claim for reimbursement should be denied because the New York LMTs failed to submit the required form. Following its application of

6

subparagraph V(c), the CAB concluded that the petitioner had not met her burden of proof. We understand the CAB to have weighed its finding of noncompliance with RSA 281-A:23, V(c) against its prior statements finding the petitioner's testimony credible, affording Kim's medical opinions "substantial weight," and finding Kim's opinions more reasonable than Farber's, to reach a single conclusion — that the petitioner failed to establish that her treatment was reasonable, necessary, and related to her workplace injury.[1] This constituted legal error.

Failure to meet the requirements of RSA 281-A:23, V(c) is irrelevant to the determination of whether the treatment received was reasonable, necessary, and related to the workplace injury under RSA 281-A:23, I. See RSA 281-A:23. When determining the reasonableness of treatment, "the proper analysis is whether the petitioner presented objective evidence showing, that at the time the [treatment was] ordered, it was reasonable for [the petitioner] to seek further treatment, be it diagnostic or palliative." Appeal of Lalime, 141 N.H. 534, 538 (1996) (holding that the petitioner's negative test results did not render the cost of testing and treatment unreasonable). Whether a health care provider furnished a Workers' Compensation Medical Form within 10 days of the first treatment simply does not bear on the question of whether the treatment itself was reasonable, necessary, and related to a patient-employee's workplace injury. See RSA 281-A:23, I, V(c); cf. Appeal of Lalime, 141 N.H. at 537-38. Thus, the CAB improperly determined that the petitioner had failed to establish that her New York massage therapy treatment was reasonable, necessary, and related to her 2011 injury because the form required by RSA 281-A:23, V(c) had not been submitted.

The respondent argues that, notwithstanding the CAB's consideration of the LMTs' failure to submit a Workers' Compensation Medical Form, the CAB's discussion of the evidence presented supports its finding that the New York massage therapy treatment was not reasonable, necessary, and related to the petitioner's 2011 injury. The respondent interprets the CAB's order as having found that Kim's opinion failed to support the petitioner's contentions, grounding this interpretation in the CAB's statement that it "found the fact that massage therapy was missing from several of [Kim's] notes disturbing." Although some of Kim's contemporaneous treatment notes did not explicitly list massage therapy as part of the petitioner's treatment plan, and "our task is not to determine whether we would have found differently than did the board, or to

---

[1] Our interpretation of the CAB's decision is strengthened by the CAB's ruling on the petitioner's motion for rehearing. Although the petitioner argued, inter alia, in her motion for rehearing that the requirements of subparagraph V(c) have "nothing to do with the threshold issue of whether the medical treatment itself is reasonable, necessary, and related to the work injury," the only reason explicitly articulated within the CAB's decision for denying the motion was: "The refusal of [petitioner's] providers to complete and submit Worker's Compensation Medical Forms is not good cause within the meaning of RSA 281-A:23 V."

reweigh the evidence," Appeal of Dean Foods, 158 N.H. 467, 474 (2009) (quotation omitted), the CAB's own characterization of the evidence before it belies the respondent's interpretation of the CAB's decision, see Guy, 157 N.H. at 649.

The CAB afforded "substantial weight" to Kim's opinion that "weekly massage therapy is reasonable and necessary in managing . . . [the petitioner's] work related injury" despite the apparent disconnect between some of his contemporaneous treatment notes and subsequent opinion letters. See Appeal of Morin, 140 N.H. at 519 ("Treating physicians are especially important in a workers' compensation case . . . ."). Although an administrative board is free to reject even an uncontradicted medical opinion so long as it identifies the considerations supporting its decision to do so, Appeal of Kehoe, 141 N.H. 412, 418-19 (1996), we do not interpret the CAB's decision as having rejected the medical evidence provided by Kim, see Guy, 157 N.H. at 649.

To the contrary, the CAB explicitly found that Kim "ordered the continuance of massage therapy." Moreover, the petitioner testified that during her visits with Kim, he verbally recommended that she receive massage therapy treatment, and the CAB credited the petitioner's testimony. The CAB did note what it deemed to be a "disturbing" discrepancy in the documentary evidence Kim provided, but immediately thereafter noted that Kim's two opinion letters "explain[ed] the treatment plan more clearly," and found "Dr. Kim's medical opinions to be slightly more reasonable and sounder than those of Dr. Farber." Even assuming the CAB discounted the weight it might have otherwise afforded Kim's medical opinion, the CAB did not conclude, as the respondent asserts, that Kim's "opinion failed to support the [petitioner's] contentions."

The respondent also argues that Kim's contemporaneous notes qualify as competent evidence in the record to support the CAB's ultimate decision that the petitioner did not carry her burden of proof. Although it is true that an administrative board's findings of fact will not be disturbed if they are supported by competent evidence in the record "upon which the board's decision reasonably could have been made," Appeal of Dean Foods, 158 N.H. at 474, the CAB's decision finding that the petitioner had not met her burden of proof could not "reasonably . . . have been made" based upon Kim's notes, id., in light of its other findings.

As discussed above, although some of Kim's notes did not contain his recommendation that the petitioner continue massage therapy, the CAB explicitly found that Kim ordered the continuance of massage therapy and gave substantial weight to his opinion that massage therapy was reasonable and necessary in treating her work-related injury. The CAB could not reasonably have found that the petitioner failed to prove that the massage therapy treatment at issue was reasonable, necessary, and related to her workplace

8

injury because some of Kim's notes did not contain the massage recommendation, while also finding, based upon the evidence before it, that Kim ordered the continuance of massage therapy. See Appeal of Lemire-Courville Associates, 127 N.H. 21, 32 (1985) (explaining that an administrative board cannot rest its decision on contradictory factual findings). Therefore, Kim's notes do not constitute competent evidence in the record upon which the CAB's decision could reasonably have been made. See Appeal of Dean Foods, 158 N.H. at 474.

To summarize, we agree with the petitioner that the CAB improperly considered the LMTs' failure to submit forms pursuant to RSA 281-A:23, V(c) in its determination that the petitioner failed to establish the treatment was reasonable, necessary, and related to her 2011 workplace injury. See RSA 281-A:23, I; Appeal of Wingate, 149 N.H. at 15. We also find that, given the CAB's factual findings and credibility determinations, there is not competent evidence in the record upon which we could affirm the CAB's conclusion that the petitioner did not carry her burden under RSA 281-A:23, I. We therefore reverse the board's decision that the petitioner did not meet her burden to prove that the treatment at issue was reasonable, necessary, and related to her workplace injury. See Appeal of Panaggio, 172 N.H. at 15; Appeal of Wingate, 149 N.H. at 15; see also RSA 541:13.

III

The respondent maintains that the petitioner is nonetheless barred from being reimbursed for her New York massage therapy treatment because the LMTs failed to comply with the requirements of RSA 281-A:23, V(c), which the respondent asserts provides "a stand-alone basis sufficient to support the CAB's refusal to order the [petitioner] be reimbursed." The petitioner argues that the requirements of RSA 281-A:23, V(c) apply only to reimbursement arrangements between a health care provider and an insurance carrier and/or employer. Therefore, she asserts, because she is seeking reimbursement for treatments she had paid for personally, the CAB erred in applying subparagraph V(c)'s requirement that a Workers' Compensation Medical Form be submitted within 10 days of the first treatment to her case. The plain language of the statute supports the petitioner's interpretation.

On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. Appeal of Phillips, 169 N.H. 177, 180 (2016). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe the Workers' Compensation Law liberally to give the broadest reasonable effect to its

9

remedial purpose. Id.; see Appeal of Griffin, 140 N.H. 650, 654 (1996) (explaining that we "resolv[e] all reasonable doubts in statutory construction in favor of the injured employee in order to give the broadest reasonable effect to the remedial purpose of workers' compensation laws"); cf., e.g., Appeal of Levesque, 136 N.H. 211, 213-14 (1992) (holding RSA 281-A:23, I, does not distinguish between palliative and curative care).

The respondent points to the mandatory language in RSA 281-A:23, V(c), stating, "[t]here shall be no reimbursement for services rendered," as evidence that the legislature did not intend to create a distinction based upon the party seeking to be reimbursed. We must interpret this clause in the context of the statute as a whole, see Appeal of Phillips, 169 N.H. at 180, and in doing so, arrive at the opposite conclusion, see id.; Appeal of Morin, 140 N.H. at 519.

The sentence to which the respondent refers reads in full — "There shall be no reimbursement for services rendered, unless the health care provider or health care facility giving medical, surgical, or other remedial treatment furnishes the report required in subparagraph (b) to the employer, insurance company, or claims adjusting company within 10 days of the first treatment." RSA 281-A:23, V(c). The parties do not dispute that under subparagraphs V(b) and (c), it is the health care provider and/or health care facility that must both "report" information via the developed form and "furnish[] the report" accordingly. RSA 281-A:23, V(b)-(c). The parties dispute whom the statute contemplates as the actor seeking reimbursement under subparagraph V(c).

The health care provider or facility must furnish the pertinent report to effectuate "reimbursement for services rendered." RSA 281-A:23, V(c); see id. The plain and ordinary meaning of "render" is "to give back, deliver, yield, cause to become," and "to do (a service) for another." Webster's Third New International Dictionary 1922 (unabridged ed. 2002); see K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 185 (2014) ("When a term is not defined in the statute, we look to its common usage, using the dictionary for guidance."); see also RSA 21:2 (2012). In other words, this language in subparagraph V(c) addresses the requirements for reimbursement when the party seeking reimbursement is the party "render[ing]," or delivering, services to another, i.e., the health care provider or health care facility. RSA 281-A:23, V(c).

This interpretation is strengthened by the fact that subparagraph V(c), as a whole, is focused on health care providers and health care facilities, not the recipients of treatment from such entities. See id. The final sentence of the subparagraph states, "The employer, claims adjustment company, self-insurer or insurer shall pay the health care provider or health care facility within 30 days of receipt of a bill for services." Id. (emphasis added). The first sentence of the subparagraph supports this construction as well. It provides, "The

10

commissioner may assess a civil penalty of up to $2,500 on any health care provider who without sufficient cause, as determined by the commissioner, bills an injured employee or his or her employer for services covered by insurers or self-insurers under this chapter." Id. The contemplated actor seeking to be paid for services rendered is "any health care provider," id., and the provision states that it is improper for any such provider to seek payment from a patient-employee or her employer without sufficient cause when services are covered by insurers or self-insurers. See id.

Thus, we conclude that RSA 281-A:23, V(c)'s provision stating that "[t]here shall be no reimbursement for services rendered" applies only to health care providers and health care facilities seeking "reimbursement for services rendered." Id. By the plain language of RSA 281-A:23, V(c), its requirements do not apply to a patient-employee who is seeking reimbursement of payments that she made to providers for treatment she received. See id. That the legislature did not see fit to create a parallel set of requirements for patient-employees who are seeking reimbursement for payments made to health care providers does not change our conclusion. See Appeal of Phillips, 169 N.H. at 180 ("We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include."). Compare RSA 281-A:23, with N.Y. Workers' Compensation Law § 13 (West, Westlaw through L.2019, chapter 758 & L.2020, chapters 1 to 56, 58 to 127) ("The employee shall not be entitled to recover any amount expended by him for such treatment or services unless . . . ."). We also disagree with the respondent that New Hampshire Administrative Rules, Lab 508.01(b) supports a different conclusion. See N.H. Admin. R., Lab 508.01(b) (tracking language of RSA 281-A:23, V(c)). Our construction of the statute is consistent with our goal of giving the broadest reasonable effect to the remedial purpose of the Workers' Compensation Law. See Appeal of Morin, 140 N.H. at 519; Appeal of Phillips, 169 N.H. at 180.

Because we construe RSA 281-A:23, V(c) as inapplicable to the petitioner's case, we need not address the parties' arguments pertaining to the "good cause" exception of subparagraph V(c). See RSA 281-A:23, V(c).

In sum, we reverse the CAB's decision that the petitioner failed to prove the massage therapy treatment at issue was reasonable, necessary, and related to her 2011 workplace injury, and we remand to the CAB for a calculation of the petitioner's benefits. See Appeal of Kehoe, 141 N.H. at 420.

Reversed and remanded.

HICKS, BASSETT, and DONOVAN, JJ., concurred.

11